229 N.J. Super. 430 (1988)
551 A.2d 1022
HARRY L. SPAULDING, PLAINTIFF-RESPONDENT,
v.
S. KHALID HUSSAIN, M.D. DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted October 11, 1988.
Decided December 27, 1988.
*432 Before Judges PRESSLER, O'BRIEN and STERN.
Horn, Kaplan, Goldberg, Gorny & Daniels, attorneys for appellant (Wayne R. Rosenlicht, of counsel and on the brief).
Ferrara & Waldman, attorneys for respondent (Michael A. Ferrara, Jr., on the brief).
The opinion of the court was delivered by PRESSLER, P.J.A.D.
Plaintiff Harry L. Spaulding brought this action on both contract and tort theories against defendant S. Khalid Hussain, a neurologist who had treated him for the serious injuries he suffered when he fell into a pit at a scrap metal yard owned and operated by Cumberland Recycling Corporation. The gravamen of the complaint was that Hussain improperly refused to testify on plaintiff's behalf as his treating physician at the trial of his negligence action against Cumberland, requiring him to settle his claim against Cumberland for a grossly inadequate sum. Following a trial in which plaintiff in effect "retried" his case against Cumberland as well as his action against Hussain, the jury, responding to extensive special interrogatories, returned a verdict in plaintiff's favor on both the contract and tort theories. It also, however, allocated 45% of total negligence to plaintiff. The trial judge thereafter granted plaintiff's motion for judgment n.o.v. and assessed 100% of causative negligence to defendant. Defendant appeals, claiming error in the grant of the motion for judgment n.o.v., in the denial of his motion for a new trial, and in the manner in which the trial judge calculated prejudgment interest.
In August 1981 plaintiff, then 61 years old and a self-employed scrap dealer, brought a load of light iron to the premises of Cumberland Recycling Corporation. As was his custom, he *433 drove his pickup truck to a metal ramp at the edge of the pit in which scrap metal of that nature was ordinarily dumped and compacted. Assisted by his cousin, he attempted to unload the truck by tossing the iron into the pit. As they were engaged in this maneuver, plaintiff slipped on grease which covered the metal ramp and fell into the pit. He sustained serious and permanent orthopedic and neurological injuries whose treatment required surgery, lengthy hospitalizations, and extensive rehabilitation. His primary physician throughout was defendant Hussain.
In due course, plaintiff filed a negligence action against Cumberland claiming that it had failed to maintain its business premises in a reasonably safe condition and that it was consequently liable to him, a business invitee, for the injuries caused by the defective condition of the property. In preparation for trial, plaintiff's then attorney, Kenneth Calloway, obtained the forensic services of a consulting engineer, whose expert opinion supported plaintiff's theories of Cumberland's liability. Calloway, regarding Hussain's prospective testimony as critical to the damages issues, met with him in May 1984 to review his various written reports, to discuss plaintiff's continuing symptoms, condition and prognosis, and to ensure his availability at trial. By this time it appeared that Cumberland was not proposing to offer any medical proofs in contravention and, hence, that Hussain was the sole anticipated medical witness. In any event, according to Calloway's testimony in this trial, Hussain unequivocally agreed at that conference that as long as he had adequate notice, he would willingly appear at trial.
Trial of the action against Cumberland was first scheduled for November 26, 1984. Calloway advised Hussain of the date, Hussain said he would be out of the country, and Calloway sought and was granted an adjournment. The trial was rescheduled for January 2, 1985, a Wednesday. Calloway testified that he telephoned Hussain's office on December 5, 1984 to ascertain his availability for trial on the January date and was assured by Hussain's secretary that although he was still out of *434 the country, he would return at the end of December and would be then able to testify. Calloway wrote to Hussain the same day, confirming this understanding. Relying on these representations, Calloway assumed he could proceed on January 2, 1985, and the trial in fact then commenced. Calloway spoke to Hussain on that date and agreed to accommodate the doctor's request that his testimony be delayed until the following Monday, January 7th, the doctor explaining that he had just returned from an extended vacation and would be engaged in pressing professional obligations for the balance of the week. However, according to Calloway, Hussain asked him to be sure to call his, Hussain's, office and tell his secretary to prepare plaintiff's file for him to take home and review over the weekend so he would be ready for trial on the Monday morning. In further accommodation of plaintiff's scheduling problems with Hussain, Cumberland, with the court's consent, agreed to put in its defense before Hussain testified. Thus, by the end of the week, both sides had adduced all of their proofs with the exception of Hussain's testimony.
Calloway expected Hussain in court at 9:00 a.m. on Monday morning. He testified that he tried unsuccessfully to reach him by telephone four times between 8:15 a.m. and 8:25 a.m. to confirm his arrival. Hussain did not appear, and Calloway finally reached him from the courthouse between 9:00 a.m. and 10:00 a.m. During the course of that conversation, Hussain said that he would be leaving the hospital at noon, would call Calloway at the courthouse when he left, and would arrive at 1:00 p.m. Calloway advised the trial judge of these representations and requested and was accorded the further indulgence of deferral of the trial until the afternoon. The jurors were accordingly then excused and Calloway stationed himself at the telephone to await Hussain's call. It never came. Neither did Hussain. Nor did Calloway's telephone calls to Hussain's offices and the various hospitals at which he practiced succeed in tracking him down. Calloway, it should be noted, had never subpoenaed Hussain. He assumed, in view of Hussain's original *435 promise to appear and repeated reassurances thereafter that a subpoena was not necessary for procuring his attendance. He nevertheless had asked Hussain if service of a subpoena would be helpful to him in explaining his court attendance to the hospitals in which he practiced. Being assured by Hussain that he did not require one for that purpose, Calloway never served one.
When it became clear to Calloway that Hussain would not appear, he began, so he testified, to weigh his options which he regarded as threefold: seeking a further continuance, moving for a mistrial, or accepting Cumberland's inadequate settlement offer of $75,000 and looking to Hussain thereafter to make plaintiff whole. He concluded that he was not in a position to request a further continuance since he could make no representation to the judge respecting Hussain's whereabouts or testimonial intentions. He also decided against moving for a mistrial reasoning that
it wasn't fair to Harry [plaintiff] who went through the trial. Wasn't fair to the witnesses. Wasn't fair to anybody. It was a big expense as well. The expense wasn't the problem. It was the rescheduling and retrying the whole case over again and I don't know that that would have been granted or not because I'm the one that caused the problem and I'm the one asking for a mistrial.
He therefore opted to accept Cumberland's settlement offer.[1]
Plaintiff's complaint charged Hussain with "intentional deception," breach of his express agreement to testify, and breach of his duty to treat his patient, a duty alleged to include testifying on his behalf if necessary. Defendant's primary *436 defense, as it developed through discovery and trial, was essentially factual. It was his assertion, not entirely corroborated by the relevant hospital records, that he was with a critically ill trauma patient during the morning and afternoon of January 7, 1985. He also asserted, although Calloway denied it, that at some point prior to that fateful Monday, he, Hussain, had offered to have his de bene esse videotaped deposition taken in lieu of appearing in court. Defendant had also asserted in his answer, albeit perfunctorily, that plaintiff was guilty of "comparative negligence" and by way of the pretrial order, that "mitigation" was an issue.
The "comparative negligence" defense was apparently intended to encompass the contention that Calloway had exercised unreasonable professional judgment in accepting the Cumberland offer instead of moving for a mistrial. In apparent anticipation of a defense so posited, plaintiff retained the forensic services of a certified civil trial attorney, Thomas Vesper, an experienced attorney practicing in the venue in which plaintiff's action against Cumberland had been laid. Vesper testified at the Hussain trial, opining that under all the circumstances, Calloway had exercised sound professional judgment in reviewing the available alternatives when Hussain failed to appear and that his decision to accept the Cumberland offer and then to look to Hussain was eminently reasonable.[2] Defendant did not adduce any expert proof on this issue. We note further that the "mitigation" defense advanced by defendant was essentially the same defense in the contract context as the contributory negligence defense was in the negligence aspect, namely, that plaintiff's loss of a full recovery from Cumberland should have been mitigated by a motion for a mistrial which, if granted, would have preserved the claim intact.
*437 Following the completion of the proofs and after a conference in chambers with counsel respecting his proposed charge to the jury, the trial judge prepared a set of interrogatories for the jury to answer and gave counsel an opportunity to be heard with respect thereto. The interrogatories addressed four basic subjects: plaintiff's negligence action against Cumberland, plaintiff's contract action against Hussain, plaintiff's negligence action against Hussain, and plaintiff's damages for the injury and loss he sustained as a result of the fall. The questions respecting the contract action against Hussain did not directly or indirectly address plaintiff's duty to mitigate damages, and defendant did not object to this omission. The questions respecting the negligence action against Hussain did, however, address plaintiff's negligence despite defendant's failure to request either an instruction or an interrogatory on that issue. Thus, question 12 posed this query to the jury:
Do you find that Harry Spaulding, through his attorney Kenneth E. Calloway, was negligent in failing to take all of the steps a reasonable and prudent person (attorney) would have taken to secure the appearance of Dr. Hussain on January 7, 1985 (or alternatively obtain a postponement of the litigation or seek a mistrial)?
Plaintiff's objection to this question was overruled.
In its ensuing charge to the jury on plaintiff's negligence cause against Hussain, the trial judge, without objection from defendant, defined the treating physician's litigation duty to his patient as follows:
A doctor, I charge you, has the duty, when he undertakes to treat a patient, to treat the whole patient unless otherwise agreed, and it can be otherwise agreed when a doctor treats an accident victim, the physician impliedly agrees to appear and testify on behalf of his patient on issues such as the nature, extent and causality of his patient's injuries.
This duty, I caution you, is one tempered by reasonableness and fairness; that is, there must be a reasonable notice to the Doctor and the obligation must be allowed to be discharged in a reasonable manner with minimal inconvenience consistent with the objects, however, of the testimony being elicited with consideration being given to the physician in matters such as time and place of the appearance, whenever reasonably possible.
Fairness generally dictates that the physician should be fairly compensated for his time and the care of the physician's patient may never be put at risk by such an appearance. Medical emergencies or other medical events, not necessarily *438 an emergency, are appropriate reasons to defer, if not excuse such appearance and when circumstances are brought to the attention of the patient or his attorney, such as a medical emergency or medical circumstances that are unusual, an application for the postponement and rescheduling of the physician's testimony should be promptly made to the trial Court.
With all of those considerations in mind, a doctor who fails to respond to Court on behalf of his patient, may be held liable for the damage suffered by the patient because of that refusal. You must find that the standard, as I have described it, was violated by the Doctor and in order to prevail, Plaintiff must prove that that failure proximately caused his damage.
* * * * * * * *
Dr. Hussain has offered, as an explanation for his non-appearance, failure to be timely notified and a medical emergency or medical, unusual event. It's for you to sift through these factual disputes to arrive at what you believe to be true and I have already told you if it's a bonafide medical emergency or unusual event, proper excuse, the Court notified and rescheduling occurs and I also told you if the notice to the Doctor is unreasonable, then he violates no standards by non-appearance, if you find it was so unreasonable as to not allow a proper response.
He also charged plaintiff's negligence, instructing the jury that
If you find that the Plaintiff, through his attorney was comparatively negligent, didn't call it off, didn't write enough letters, didn't move for a mistrial, move for a postponement, then you may compare the negligence of the Doctor, Dr. Hussain and the Plaintiff and/or his agent, if you so find in the same manner percentagewise, and the same result pertains insofar as what the ultimate outcome would be based on how you find those percentages.
With respect to plaintiff's contract action against Hussain, the trial judge correctly charged the elements of promissory estoppel, namely, a clear and definite promise made with the expectation that the promisee will rely coupled with reasonable reliance thereon by the promisee to his detriment. See Friedman v. Tappan Development Corp., 22 N.J. 523 (1956); The Malaker Corp. v. First Jersey National Bank, 163 N.J. Super. 463 (App.Div. 1978), certif. den. 79 N.J. 488 (1979). Although the charge did not refer to mitigation principles, the interrogatories posed to the jury on that cause of action asked it to determine if Hussain was justified by reason of a medical emergency in not appearing in court on January 7, 1985.
The jury, in answering the interrogatories, found that Cumberland was liable to plaintiff in negligence but that plaintiff's negligence vis-a-vis his fall into the pit constituted 35% of total *439 negligence. In respect of the contract action against Hussain, it found that plaintiff had proved every element of promissory estoppel and that Hussain was not justified by a medical emergency in failing to appear. In respect of the negligence action, the jury found a causative breach of duty on Hussain's part and negligence on Calloway's part imputable to plaintiff, allocating total negligence between them at 55% and 45%, respectively. It also found plaintiff's total damages to be $250,000.
Prior to the molding of the verdict, plaintiff moved for judgment n.o.v. eliminating any allocation to plaintiff's negligence. Defendant cross-moved for a new trial based on the judge's failure to charge mitigation and his alleged error in failing, sua sponte, to declare a mistrial so that defendant could obtain a legal expert. Plaintiff's motion was granted. Defendant's motion was denied.
The final post-verdict issue was the manner of calculating prejudgment interest pursuant to R. 4:42-11(b). The judge's methodology was first to reduce the $250,000 verdict by the 35% representing plaintiff's negligence in respect of the original accident. That yielded $162,500. The question then was whether, as plaintiff contended, prejudgment interest should be calculated on and added to that entire sum and the $75,000 Cumberland settlement then deducted or whether, as defendant contended, the $75,000 should be first deducted from the $162,500 and interest allowed only on the difference. The judge opted for the first of these alternatives. We agree with neither.
Before addressing the issues defendant raises on appeal, we comment on the trial judge's definition, to which defendant did not object, of the treating physician's litigation duty. The trial judge, as noted, instructed the jury that unless otherwise agreed, a physician treating an accident victim "impliedly agrees to appear and testify on behalf of his patient on issues such as the nature, extent, and causality of his patient's injuries." *440 In so concluding, the judge was relying on dictum expressed in two out-of-state cases in the context of the quite different issue of whether a treating physician breaches the patient-physician relationship by giving information to his patient's litigation antagonist. Thus, in Alexander v. Knight, 197 Pa.Super. 79, 177 A.2d 142, 146 (Super.Ct. 1962), the court answered that question affirmatively, reasoning from the proposition that physicians
owe their patients more than just medical care for which payment is exacted; there is a duty of total care; that includes and comprehends a duty to aid the patient in litigation, to render reports when necessary and to attend court when needed.
This view was echoed in Hammonds v. Aetna Casualty & Surety Company, 243 F. Supp. 793, 799 (N.D.Ohio 1965), in which the court agreed with Alexander, accepting the principle "that part of a doctor's duty of total care requires him to offer his medical testimony on behalf of his patient if the patient becomes involved in litigation over the injury or illness which the doctor treated." Compare Stempler v. Speidell, 100 N.J. 368 (1985).
Our courts have recognized, on contract principles, the enforceability of a treating physician's affirmative undertaking to testify. See Battista v. Bellino, 113 N.J. Super. 545 (App. Div. 1971); Stanton v. Rushmore, 11 N.J. Misc. 544 (Sup.Ct. 1933), aff'd. 112 N.J.L. 115 (E. & A. 1933). Although no reported decision in this jurisdiction has dealt with the physician's duty to testify as part of his duty to treat his patient, we are in general concurrence with the view of the trial judge and that expressed in Alexander and Hammonds. Thus, we are satisfied that a treating physician has a duty to render reasonably required litigation assistance to his patient. But whether that assistance unequivocally and invariably requires the physician to testify in court is a question we need not here address. Clearly, a physician who tells his patient from the outset that he will not testify is not thereby absolved from rendering other litigation assistance, including the rendering of reports, consultation *441 with counsel and forensic witnesses, and the like. By the same token, we are not prepared to say that a physician who does not make such an early disclaimer has no choice but to testify. He may, in the particular circumstances, be able to fulfill his duty to render litigation assistance in like manner or by submitting to videotaped depositions pursuant to R. 4:14-9.
We recognize the ongoing tensions between the medical and legal professions in respect of required physician testimony. Doctors generally do not want to come to court, and personal-injury plaintiffs cannot try their cases without them. Thus, trial judges as well as opposing counsel are ordinarily extremely indulgent in terms of scheduling adjustments, taking witnesses out of turn, and otherwise accommodating the needs of physician witnesses. R. 4:14-9 was obviously designed to provide another solution to the problem. Physicians themselves, as we have suggested, may render other litigation assistance short of testifying. But however far the litigation duty may extend at its outer limits, this much at least is clear  a treating physician is not at liberty to ignore with impunity the basic obligation of rendering a reasonable modicum of litigation assistance. Nor is he free, without compelling professional justification, to renege on a promise, reasonably and detrimentally relied upon by his patient, to render specific litigation assistance. This is what the jury here found defendant Hussain to have done. That finding was clearly supported by the weight of credible evidence and, just as clearly, supported the conclusion of defendant's liability to plaintiff on both tort and contract grounds.
We address next defendant's contention that the trial judge erred in granting plaintiff's motion for judgment n.o.v. We reject first the argument that the judge was procedurally barred from granting the motion since plaintiff had not moved for equivalent underlying relief during trial. See R. 4:40-2(b). We agree that as a matter of technical propriety plaintiff should have moved to strike the defense of plaintiff's negligence before jury deliberations in order to preserve his right to *442 seek that relief by way of a renewed motion after verdict. In the circumstances here, however, we are satisfied that his objection to the interrogatory question on plaintiff's negligence was an adequate substitute for the requisite trial motion. See, e.g., Menza v. Diamond Jim's, Inc., 145 N.J. Super. 40, 44 (App.Div. 1976); Logan v. Tp. of No. Brunswick, 129 N.J. Super. 105 (App.Div. 1974), certif. den. 66 N.J. 328 (1974).
As we have pointed out, defendant had not requested a plaintiff's negligence instruction or proposed an interrogatory for the jury on that subject. Nor had defendant adduced expert proof challenging the legal opinion of plaintiff's expert. In view of defendant's trial conduct, plaintiff had no reason to anticipate that the question of plaintiff's negligence was really in issue. Surely, the perfunctory affirmative defense of "comparative negligence" pleaded in a pro forma answer could not reasonably have alerted him to the contrary, particularly since defendant did not raise that issue in his pretrial contentions. See R. 4:25-1(b), providing that the pretrial order supersedes the pleadings. We are therefore persuaded that plaintiff's objection to the jury interrogatory was both sufficiently timely and sufficiently effective to provide a basis for the subsequent application for and grant of the n.o.v. relief.
We are also persuaded that as a matter of substance the trial judge was correct in granting that relief. We have no doubt that the only basis in this record for a finding of plaintiff's negligence was the conduct of his attorney in opting to accept Cumberland's settlement offer instead of moving for procedural relief  a mistrial or a continuance. The question then is whether there was any evidence in this record which could justify the finder of fact in concluding that that decision was negligent in that it constituted a breach of a duty which the attorney owed his client. Measured solely by what was best for his client under all the circumstances  and not by what was best for the non-appearing physician  we think it beyond question, on this record, that Calloway exercised reasonable professional judgment in proceeding as he did.
*443 In any event, if there were any debatable question as to whether Calloway's professional conduct in the circumstances was reasonable, that question could not have been decided without expert testimony establishing the appropriate standard of care and the substance of the breach thereof. This was not a case in which an attorney's negligence is so clear as to be reasonably within the ordinary knowledge, experience and understanding of lay people. Compare, e.g., Fuschetti v. Bierman, 128 N.J. Super. 290 (Law Div. 1974) (failure to file suit before running of the statute of limitations); Stewart v. Sbarro, 142 N.J. Super. 581 (App.Div. 1976), certif. den. 72 N.J. 459 (1976) (failure to execute and record bond and mortgage). What was involved, rather, was a sophisticated, professional judgment made in difficult circumstances requiring the application of legal knowledge and trial experience beyond the ken of lay jurors. The reasonableness of that judgment could not therefore be evaluated by a jury unaided by expert testimony. See generally Buckelew v. Grossbard, 87 N.J. 512 (1981). And see Annot., Expert Evidence  Legal Malpractice Action, 14 A.L.R. 4th 170 (1982). Defendant offered no expert testimony on the issue of Calloway's conduct. He therefore failed to adduce any proof which could have warranted the jury in finding as a fact that Calloway was professionally negligent.
We also reject defendant's contentions respecting plaintiff's duty to mitigate damages. As we understand the claim, defendant urges that "the court below had no choice but to instruct the jury that a mistrial or continuance would have been granted had it been requested, or that other options, such as a videotaped deposition or subpoena, could have been employed." The question, however, is not whether the judge at the Cumberland trial would have been obliged as a matter of law to grant the procedural relief had it been requested. Compare Klimko v. Rose, 84 N.J. 496, 502 (1980). And see Wilkens v. Hudson County Jail, 217 N.J. Super. 39 (App.Div. 1987), certif. den. 109 N.J. 520 (1987). Rather, as we view the matter, mitigation in this context is not conceptually different from defendant's *444 claim of plaintiff's negligence. In both cases, the sole factual issue is whether Calloway acted in a professionally reasonable manner when he decided to opt for the Cumberland settlement. In sum, defendant's nonappearance after he had promised to come, after the proofs had been taken out of order on his account, after trial had been continued for half a day on his account, and after his whereabouts could not be ascertained, threatened a litigation catastrophe to plaintiff and his attorney. They were obviously entitled to deal with that impending catastrophe in any reasonable manner which counsel, in his judgment and with plaintiff's concurrence, believed would best protect plaintiff's  not defendant's  interests. There was no proof that the option chosen by plaintiff's attorney and agreed to by plaintiff, was not reasonable. Defendant was not entitled to anything more.
We also reject defendant's contentions respecting legal expert witnesses. The argument he makes is that the trial judge, after deciding on the basis of an Evid.R. 8 hearing to permit Vesper to testify as to issues not contained in his original report,[3] should have declared a mistrial in order to afford defendant the opportunity to secure an opposing expert even though defendant did not move for a mistrial. The argument is patently specious. It is not the obligation of the trial judge sua sponte to monitor experienced counsel's trial preparation or strategy, especially when he is not asked to do so.
The final issue before us is that of prejudgment interest. As we view the matter, plaintiff was entitled to be made whole by defendant for the loss he sustained by reason of defendant's nonappearance. Our predicate, as was the trial judge's, is that had defendant testified at the Cumberland trial, plaintiff, as of January 7, 1985, the date of the defendant's tort and contract *445 breach, would have been entitled to a verdict of $162,500 plus prejudgment interest thereon. As of that date, however, plaintiff received only the $75,000 settlement proceeds. He did have the use of that sum thereafter. What he did not, however, then have but was entitled to was the difference between $162,500 plus all the prejudgment interest which had already accrued thereon less the $75,000. In our view, therefore, in order to be made whole within the intendment of R. 4:42-11(b),[4] two separate calculations have to be made. First, the full verdict value of $162,500, including prejudgment interest to January 7, 1985, must be calculated. From that sum, $75,000 must be deducted. The difference is the amount of plaintiff's economic loss and is also the amount on which prejudgment interest should be calculated from January 7, 1985, forward.
We remand to the trial court for recalculation of prejudgment interest in accordance herewith. In all other respects, the judgment appealed from is affirmed.
NOTES
[1] There was no mention during this trial or on appeal of the possibility of a fourth alternative, bifurcation for trial of the issues of damages and liabilities. See R. 4:38-2(b). While having the jury decide liability alone with a reservation of the damages issue for a subsequent trial might have been a reasonable response to the dilemma, it may be that it was not regarded as a feasible option because plaintiff's damages proofs other than Hussain's testimony were already in and hence the proof of the severity of plaintiff's injuries and the impairment of his function might have been regarded as unduly prejudicial to Cumberland in respect of a verdict limited to liability alone.
[2] Plaintiff had originally proposed having his legal expert testify as to the "value" of plaintiff's claim against Cumberland. Although the court on defendant's motion barred such testimony, the order expressly permitted expert legal testimony on any other relevant issue.
[3] The admissibility ruling itself is not directly challenged and was patently appropriate. See Amaru v. Stratton, 209 N.J. Super. 1, 11 (App.Div. 1985). And see Skibinski v. Smith, 206 N.J. Super. 349, 352-353 (App.Div. 1985).
[4] Defendant does not argue the inapplicability to this verdict of R. 4:42-11(b). In any event, interest would be allowable on the contract cause of action as a matter of equitable principle. See Bak-A-Lum Corp. v. Alcoa Building Prod., 69 N.J. 123 (1976).