233 N.J. Super. 612 (1989)
559 A.2d 868
SALVATORE COVINO, PLAINTIFF-APPELLANT,
v.
WAYNE J. PECK, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 17, 1989.
Decided June 14, 1989.
*613 Before Judges DEIGHAN and D'ANNUNZIO.
James J. Dunn argued the cause for appellant (Levinson Axelrod Wheaton & Grayzel, P.C., attorneys; Ronald B. Grayzel on the brief).
Thaddeus J. Hubert, III, argued the cause for respondent (Hoagland, Longo, Oropollo & Moran, attorneys; Thaddeus J. Hubert, III, of Counsel; Michael Eatroff on the brief).
The opinion of the court was delivered by DEIGHAN, J.A.D.
*614 Plaintiff Salvatore Covino appeals from an order entered by the Law Division granting summary judgment to defendant Wayne J. Peck, dismissing all claims with prejudice, and denying plaintiff's cross-motion for summary judgment.
Defendant, an attorney, had filed a complaint on behalf of plaintiff against 11 manufacturers and distributors of asbestos products. The complaint was dismissed with prejudice on the basis that the claim was barred by the New Jersey Statute of Limitations for personal injuries. N.J.S.A. 2A:14-1 and 2A:14-2. Plaintiff then instituted suit against defendant for malpractice and also filed a products liability claim against two asbestos manufacturers. Plaintiff's motion for summary judgment on the basis that defendant was negligent as a matter of law was granted. However, summary judgment was then entered against plaintiff on the ground that he could not identify the particular manufacturers or distributors of the asbestos products to which he had been exposed. Since plaintiff was unable to establish a cause of action against those two manufacturers or distributors, the entire action was dismissed.
On a prior appeal to this court from the dismissal of the complaint, we affirmed, as a matter of law, the granting of summary judgment against defendant for failure to file the complaint within the period of time under the statute of limitations. However, we reversed the dismissal of the complaint and held that as to the identification of the manufacturers or distributors of asbestos, there were sufficient facts to support the claim and that the proffered evidence was sufficient to raise genuine factual issues.[1]
Upon remand, defendant moved for summary judgment to dismiss the complaint on the ground that the claim was barred *615 because plaintiff failed to mitigate damages. Plaintiff filed a cross-motion for summary judgment to strike, among other things, the defenses of mitigation of damages and negligence of plaintiff. As noted, on May 27, 1988, after argument, the trial judge granted summary judgment in favor of defendant and dismissed the claims of plaintiff with prejudice. At the same time, the trial judge denied plaintiff's cross-motion for summary judgment.
During a deposition, plaintiff testified that after his products liability claim was dismissed as a result of defendant's failure to timely file the complaint, he was advised by someone employed by co-counsel for a defendant in the underlying litigation that he could still institute a lawsuit in Mississippi, which has a six-year statute of limitation. He was also advised that he could sue defendant for legal malpractice. He decided not to sue in Mississippi because it would mean spending weeks there away from his job and home and he was the only person who could keep the household together. Instead, he chose to pursue this claim against defendant for legal malpractice.
The trial judge found that plaintiff was informed, either by an attorney or by a paralegal, that he had a right to sue in Mississippi on the substantive claim and a right to sue his former attorney for legal malpractice. Having concluded that plaintiff did have a viable cause of action in Mississippi, the trial judge held:
I feel in weighing all the factors, the burden of going to Mississippi and the obligation to mitigate damages, that equates weight in favor of the defendant that plaintiff should have instituted his action in Mississippi. There were additional expenses that arose out of that.
Accordingly, the complaint against defendant was dismissed for plaintiff's failure to mitigate damages by instituting an action against the asbestos manufacturers and distributors in Mississippi.
On appeal, plaintiff contends that the trial court erred in dismissing his complaint, defendant is estopped from asserting *616 the defense of avoidable consequences, and the trial court also erred in denying his cross-motion for summary judgment.
We reverse.

I
Plaintiff argues that the trial court erred in granting summary judgment to defendant and dismissing his complaint on the basis that, by not filing his complaint in Mississippi, he had failed to mitigate his damages. He argues it was implicit in this determination that it was reasonable, as a matter of law, to require plaintiff to litigate the cause of action in Mississippi rather than sue his former attorney for malpractice in New Jersey. Plaintiff contends that ordinarily it is up to the jury to make such a determination and, in certain situations, the defense of mitigation of damages may be barred for policy reasons. Defendant contends that in certain circumstances it can be decided as a matter of law that a plaintiff is required to take specific steps to mitigate damages and in this case the court correctly concluded that plaintiff was required to take the reasonable step of pursuing his cause of action in Mississippi.
The doctrine of mitigation of damages or, as it is called, the doctrine of avoidable consequences, proceeds on the theory that a plaintiff who has suffered an injury as the proximate result of a tort cannot recover for any portion of the harm if, by the exercise of ordinary care, the injury could have been avoided. Ostrowski v. Azzara, 111 N.J. 429, 437 (1988); Restatement, Torts 2d, § 918(1) at 500 (1979). The doctrine applies only to the diminution of damages and not to the existence of a cause of action. Restatement, supra, § 918, comment a. at 500. Accord, Associated Metals, etc., Corp. v. Dixon Chemical, etc., 82 N.J. Super. 281, 306 (App.Div. 1964), certif. den. 42 N.J. 501 (1964). As the Supreme Court has recently stated, "it would be the bitterest irony if the rule of comparative negligence, designed to ameliorate the harshness of contributory negligence, should serve to shut out any recovery *617 to one who would otherwise have recovered under the law of contributory negligence." Ostrowski v. Azzara, 111 N.J. at 441-442. In other words,
absent a comparative negligence act, it would have never been thought that "avoidable consequences" or "mitigation of damages" attributable to post-accident conduct of any claimant would have included a shutout of apportionable damages proximately caused by another's negligence. Negligent conduct is not "immunized by the concept of `avoidable consequences.' This argument should more properly be addressed to the question of diminution of damages; it does not go to the existence of a cause of action." [Id. at 442, citing Associated Metals & Minerals Corp. v. Dixon Chem. & Research, Inc., 82 N.J. Super. 281, 306 (App.Div. 1963), certif. den. 42 N.J. 501 (1964); Flynn v. Stearns, 52 N.J. Super. 115, 120-21 (App.Div. 1958); Restatement, supra, § 918 at 500.]
It is not true that an injured person has a duty to act, or that the conduct of the tortfeasor ceases to be a legal cause of the ultimate harm; instead, recovery for the harm is diminished because it is, in part, the result of the injured person's lack of care. See Restatement, supra, § 918 comment a. at 500. A claimant is not barred from full recovery by the fact that it would have been reasonable to make expenditures or subject himself to, for instance, pain or risk; damages will be curtailed only when he is unreasonable in refusing or failing to take action to prevent further loss. Restatement, supra, § 918, comment c. at 503.[2] Furthermore, the plaintiff's failure to take reasonable steps must be a legally contributing cause of the resulting harm if his failure to act is to diminish his recovery. Ibid.
In Spaulding v. Hussain, 229 N.J. Super. 430 (App.Div. 1988), we recently stressed the importance of examining the steps which plaintiff took after the injury from plaintiffs' point of view; we held that a defendant is not entitled to anything more. See id. at 444. There, plaintiff brought an action against a *618 neurologist who had treated him for the injuries he suffered when he fell into a pit at a scrap metal yard owned and operated by Cumberland Recycling Corporation. Id. at 432. The gravamen of the complaint was that the defendant neurologist improperly refused to testify on plaintiff's behalf at the trial of his negligence action against Cumberland, requiring plaintiff to settle his claim against Cumberland for $75,000, a grossly inadequate sum. Id. at 432. At the trial against the doctor, plaintiff in effect "retried" his case against Cumberland, as well as his action against defendant physician. Ibid.
Defendant physician contended that, at the trial against Cumberland, plaintiff should have moved for a mistrial instead of accepting the Cumberland offer. Id. at 436. The mitigation defense advanced by defendant at the second trial was that plaintiff's loss of a full recovery could have been mitigated by a motion for mistrial during the first trial which, if granted, would have preserved plaintiff's claim against Cumberland. Ibid. The trial court did not give a jury instruction on mitigation. Id. at 439.
On appeal, the defendant in Spaulding urged that "the court below had no choice but to instruct the jury that a mistrial or continuance would have been granted had it been requested, or that other options, such as a videotaped deposition or subpoena, could have been employed." Id. at 443. In responding to this argument, Judge Pressler held that "[t]he question, however, is not whether the judge at the Cumberland trial would have been obligated as a matter of law to grant the procedural relief had it been requested." Ibid. (citations omitted). Rather, the factual question was whether it was reasonable for plaintiff to opt for the Cumberland settlement. Id. at 444. It was noted that defendant's non-appearance, after he had promised to come and after other steps had been taken to accommodate him, threatened a litigation catastrophe to plaintiff and his attorney. Ibid. Judge Pressler then commented that:
They were obviously entitled to deal with that impending catastrophe in any reasonable manner which counsel ... believed would best protect plaintiff's *619  not defendant's  interest. There was no proof that the option chosen ... was not reasonable. Defendant was not entitled to anything more. [Ibid. (emphasis supplied).]
Accordingly, defendant's contentions respecting plaintiff's duty to mitigate damages was rejected. Id. at 443.
Here, defendant attorney failed to file suit within the statute of limitations and plaintiff was threatened with a "litigation catastrophe." It is undisputed that if plaintiff had sued in Mississippi, the claim against the manufacturers and distributors of asbestos would have been preserved, just as the claim against the owners of the scrap metal yard, Cumberland, might have been preserved in Spaulding if plaintiff there had sought a mistrial rather than accepted a settlement. But that is not the question. In both cases, plaintiffs were obviously entitled to deal with the litigation catastrophe in any reasonable manner which they believed would best protect their interests, not defendants'. In neither case was there any suggestion that plaintiff's options were not reasonable from plaintiff's point of view.
Here, it was not reasonable to require plaintiff, in order to absolve defendant from damages, to: expend time and money to travel to Mississippi; locate and hire an attorney; finance any investigations required in Mississippi; travel to Mississippi and stay there for whatever period of time was required; undergo depositions and a physical examination; travel and stay in Mississippi for the trial; pay and transport witnesses, as well as a medical doctors, to Mississippi for testimony; and leave his job and family. "An injured party should not be required to lay out money, as defendants' approach would require, upon a questionable assumption that one day its worth will be recaptured." N.J. Power & Light Co. v. Mabee, 41 N.J. 439, 442 (1964).
In Macomber v. Dillman, 505 A.2d 810 (Me. 1986), the Supreme Court of Maine noted that "parents should not be forced to mitigate their damages [resulting from medical malpractice] by resorting to abortion or to adoption." Id. at 817. The court *620 then noted that "most courts that have considered the matter have held, as a matter of law, neither course of action would be reasonable." Ibid. (citations omitted).
This principle has also been applied to a situation involving an action for false imprisonment and abuse of process where the statute of limitations was invoked. In Ingo v. Koch, 127 F.2d 667 (2nd Cir.1942) the court noted that the trial judge did not err in refusing to charge the jury that the plaintiff's failure to obtain a writ of habeas corpus must be considered as mitigating damages. Id. at 679, n. 23. The court also approved a response by the trial judge to a question received from the jury:
There is no doubt that she could have applied for a writ of habeas corpus, and upon doing so, the judge would undoubtedly have issued a writ. Whether the writ would have been contested and the extent of the contest and the litigation that might ensue, I can't say. No one else can say. However, if these people have done wrong in incarcerating her they cannot, in my opinion, place the burden upon the person wronged to go to the expense and difficulty, or go through the uncertainty of taking legal proceedings to escape from the consequences of the wrong that was inflicted upon her in the first instance. The duty of a defendant was not to commit a wrong at the beginning. [Ibid. (citation omitted.]
By the same token, plaintiff's decision to institute suit against the defendant for malpractice, instead of incurring the expenses and inconvenience of instituting a suit in Mississippi in an attempt to extricate defendant from his own wrongful act, was not unreasonable. Defendant contends that the trial court "correctly concluded that plaintiff was required to take reasonable steps of pursuing his cause of action in Mississippi as a matter of law." Not only do we reject this contention, but we hold that, as a matter of law, plaintiff was not required to proceed to Mississippi to institute an action in an effort to mitigate damages. A wrongdoer should not be permitted to avoid real damages by raising an issue made necessary by his very wrong. See Harris v. Perl, 41 N.J. 455, 465 (1964).
The order entered May 27, 1988 granting summary judgment to defendant and denying plaintiff's cross-motion for summary judgment is reversed in both respects. The matter is remanded *621 for the entry of a judgment consistent with this opinion and for further proceedings.
NOTES
[1] On February 19, 1987, after the prior appeal to this court, defendants Pittsburgh-Corning Corp. and Carey Canada, Inc. were granted summary judgment. No appeal was taken from that summary judgment.
[2] The Restatement, § 918, illustration 10 at 503, illustrates this principle: "A negligently burns the hand of B, a farmer. Although realizing that there is a substantial chance that his hand should have expert treatment, B waits until the following day to go to the nearest physician ten miles distant over ice-coated roads. Because of the delay, B's hand is seriously harmed. It may be found that B did not act unreasonably in delaying professional treatment."