782 A.2d 452 (2001)
344 N.J. Super. 408
CHARTER OAK FIRE INSURANCE COMPANY, Plaintiff-Appellant,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Siegel & Siegel, P.C.; Siegel and Siegel, a Partnership; Gerald D. Siegel; Seymour Siegel, and William L. Patrick as Administrator of the Estate of William Patrick, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued September 25, 2001.
Decided October 17, 2001.
*454 James D. Butler, Jersey City, argued the cause for appellant (Stanley R. Bright, on the brief).
R. Peter Connell, argued the cause for respondent State Farm Insurance Company (Connell & Connell, attorneys; Mr. Connell, Manasquan, of counsel and on the brief; Laura C. Johnson, on the brief).
Christopher J. Carey, Morristown, argued the cause for respondents Siegel & Siegel and William L. Patrick (Graham, Curtin & Sheridan, attorneys; Mr. Carey and Patrick B. Minter, on the brief).
Before Judges PRESSLER, WEFING and LESEMANN.
*453 The opinion of the court was delivered by PRESSLER, P.J.A.D.
Defendant State Farm Automobile Insurance Company was Ronald Hatt's primary automobile liability insurer. Plaintiff Charter Oak Fire Insurance Company, a subsidiary of the Travelers Insurance Companies (Charter Oak), was the excess insurer. Following a liability trial in the underlying consolidated negligence action, the jury determined that Ronald Hatt was sixty percent negligent in causing a four car automobile accident, rendering him fully liable for the entire assessed damages pursuant to N.J.S.A. 2A:15-5.3a. Prior to the damages trial, the damages issues were settled, State Farm paying its policy limit of $300,000 and Charter Oak paying the total excess of $782,000. Charter Oak thereafter commenced this action to recover that sum from both State Farm and the attorneys it had appointed to represent Hatt, defendants Siegel & Siegel and its associate. It claimed bad faith in State Farm's dealings with its insured and with it as the excess carrier, and it asserted a right of equitable subrogation to what it believed to be State Farm's right of action against the attorneys for malpractice. The trial judge granted the summary judgment motions of all defendants and dismissed the complaint in its entirety. Charter Oak appeals. We affirm.
The underlying accident occurred on September 14, 1992. Hatt was traveling south on Route 35 and stopped in order to make a left turn into a parking lot. While he was waiting to make his turn, with his left-turn directional signal properly activated, he was struck in the rear by an automobile driven by Henry Gotell. After striking the Hatt vehicle, Gotell crossed into the northbound lane and struck, head on, a vehicle operated by Parinda Desai. He then struck a third vehicle operated by Joseph Long. As a result of the collision, Parinda Desai was severely injured, and her eighteen-month old child, who had been in the back seat of the car in the lap of Madhu Desai, Parinda Desai's mother-in-law, died. Long and his passenger, his wife Helen Long, were also injured. Joseph Long filed suit against Hatt, Gotell, and Parinda Desai, and Long's wife sued those three drivers as well as Long. The Desais sued Hatt and Gotell. The actions were ultimately consolidated, and Gotell's *455 carrier, who covered him with a $15,000/$30,000 policy, paid the full amount into court. Hatt was insured by State Farm, which retained the Siegel firm to represent him, and the Siegel firm assigned its associate William Patrick to the case.
It was not until some two years after the negligence actions had been commenced that Charter Oak was noticed of the pendency of that litigation. At the time of the accident Hatt was in the course of his employment. Charter Oak was his employer's automobile liability carrier, and pursuant to the "other insurance" clause of its policy, was liable as an excess insurer. State Farm asserted that it did not learn of the availability of that excess insurance until Hatt was deposed and that it acted promptly thereafter in notifying Charter Oak's insured. That notice was given in March 1991, about a year before trial. Charter Oak's senior technical advisor, Laraine Muller, whose duties included the handling of excess claims, then opened a claim file and retained counsel, Thomas E. Lenahan, to represent its interests by monitoring the pending litigation, making reports and recommendations to her, communicating with State Farm's attorneys, and evaluating the company's excess exposure.
By the time Charter Oak had retained its counsel, there had already been an arbitration proceeding pursuant to R. 4:21A. The award, from which a trial de novo had been demanded, concluded that Gotell had been one hundred percent responsible and that Hatt was not liable at all. Hatt had also been acquitted by the Law Division on a trial de novo of a charge of making an illegal left turn, the Law Division judge having concluded that a no-turn sign on the highway a quarter of a mile north of Hatt's attempted left turn did not constitute reasonable notice to him that a left turn was not permitted at that point. Based on the foregoing, State Farm was of the view that as to Hatt, this was a no-pay case and that if he were to be found liable at all, it would be to a minimal extent since co-defendant Gotell was clearly most, if not exclusively, responsible for the accident. Consequently no settlement offer was made in view of the magnitude of the plaintiffs' damages which would have made a nominal offer patently unacceptable. Moreover, when Lenahan evaluated Charter Oak's exposure, he too concluded, based on the police reports, depositions and interrogatories as well as his conversations with Patrick, that Hatt's liability, if he was liable at all, was in the neighborhood of ten percent.
The liability trial first commenced on March 13, 1992. The trial judge had granted Hatt's unopposed in limine motion to bar evidence of the no-turn sign. However, after two witnesses had testified, the court reversed that ruling and declared a mistrial. Trial recommenced on March 16, 1992. Evidence of the no-turn sign was admitted. The jury unexpectedly returned a liability verdict finding Hatt sixty percent liable and Gotell forty percent liable.
Hatt's attorney timely filed a motion for a new trial supported by a brief pointing out asserted trial errors that appeared to have merit. Indeed, as later developed, Charter Oak's attorney was of the view that there was a substantial likelihood that Hatt's motion for a new trial would be granted and that if it were not, there would likely be an appellate reversal and remand. The return date of the motion was adjourned, principally at Charter Oak's request, to permit settlement negotiations to go forward. After various communications between the two carriers, Charter Oak advised State Farm that it would be taking over the settlement negotiations and requested that State Farm *456 withdraw its new trial motion and tender the full $300,000 of its coverage. State Farm complied. A settlement was then reached with all plaintiffs, and Charter Oak paid the excess over the amount of State Farm's coverage as required by the settlement agreement, namely $750,000 to the Desais and $32,000 to the Longs.
Charter Oak then brought this action claiming a right to recover its payments, asserting a bad faith failure to settle on the part of State Farm and malpractice on the part of Siegel & Siegel. As to Siegel & Siegel, it predicated its cause of action on both its asserted third-party beneficiary status and on its right to be equitably subrogated to State Farm's alleged malpractice claim against its own attorneys.
We consider first the claim against Siegel & Siegel. We are satisfied that although the trial judge rejected both theories, we need not address either the question of whether there is an equitable right to subrogation in these circumstances[1] or whether there was a third-party beneficiary relationship between the primary carrier's attorney and the excess insurer.[2] We reach this conclusion because we are persuaded that the facts in this record could not support a finding that there was malpractice for the reasons State Farm asserts. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995). The basis of the malpractice claim is Siegel & Siegel's failure to have counterclaimed against Parinda Desai, the infant's mother; its failure to have impleaded Madhu Desai, the infant's grandmother; and its failure to have retained the services of a so-called seat belt expert. Charter Oak's position in this regard is based on the fact that although the child had been restrained in an appropriate car seat, just before the accident she had become restive and her grandmother had removed her from it, apparently with her mother's acquiescence, to *457 calm her down. Thus, Charter Oak asserts, both were negligent. It appears that while Charter Oak's claims supervisor had raised these questions with Siegel & Siegel, its attorney, Lenahan, at no time requested or suggested any such amendment of the pleadings.
We note first that the so-called seat belt defense goes to damages and not to liability. Waterson v. General Motors Corp., 111 N.J. 238, 268-270, 544 A.2d 357 (1988); Statham v. Bush, 253 N.J.Super. 607, 614, 602 A.2d 779 (App.Div.1992). There is therefore substantial doubt as to whether any evidence of seatbelt use by any passenger would even have been admissible at a bifurcated liability trial, and hence the failure to introduce such evidence was immaterial to the jury's apparently skewed liability verdict. More to the point, however, having reviewed the record by the same standard applicable to the trial court, see Affiliated FM Ins. Co. v. State, 338 N.J.Super. 540, 557, 770 A.2d 741 (App.Div.2001), we are persuaded that as a matter of law applied to the undisputed facts of record, the failure of State Farm's attorneys to have joined the injured and bereaved mother and grandmother could not have been found by a reasonable trier of the facts to have constituted malpractice.
The standard of performance by a lawyer is clear. An attorney "is obligated to exercise that degree of reasonable knowledge, and skill that lawyers of ordinary ability and skill possess and exercise." St. Pius X House of Retreats v. Camden Diocese, 88 N.J. 571, 588, 443 A.2d 1052 (1982). That standard requires the attorney, among other obligations, to formulate a reasonable legal strategy. Ziegelheim v. Apollo, 128 N.J. 250, 261, 607 A.2d 1298 (1992). As we explained in Spaulding v. Hussain, 229 N.J.Super. 430, 442, 551 A.2d 1022 (App.Div.1988), the obligation to formulate a legal strategy simply requires that the attorney use reasonable professional judgment in so doing, whether or not that strategy is ultimately successful.
In resisting the summary judgment motion, no expert report was proffered by Charter Oak opining that the failure to join the mother and grandmother of the fatally injured child was an unreasonable exercise of professional judgment. Beyond that, we are satisfied that that decision was patently reasonable and a trier of fact could not reasonably conclude to the contrary. As we have pointed out, Hatt was entirely exonerated from liability by the arbitrator and was acquitted of a charge of making an illegal left turn. His liability exposure was rated as minimal not only by his own insurer but by the excess insurer's attorney as well. The excess insurer's attorney did not make any demand that the mother and grandmother be joined as parties defendant. We think it patent that the reasonable professional judgment of minimal liability exposure justified the strategic decision to avoid the obvious risk of alienating and antagonizing the jury by attempting to cast blame on the suffering and grieving mother and grandmother of the fatally injured childparticularly since the whole issue of seatbelt and restraint use does not implicate liability for the occurrence of the accident. The decision not to join them in these circumstances was, in our view, entirely appropriate and unexceptionable. It did not constitute malpractice. The lawyer defendants were entitled to summary judgment dismissing the complaint against them.
With respect to Charter Oak's claim against State Farm, Judge Langlois granted summary judgment dismissing that complaint on the ground of equitable estoppel, and we affirm that determination *458 for the reasons stated by her on the record. We add only the following comments.
The elements of equitable estoppel are well settled. In sum, the essence of that doctrine is to prevent a party from disavowing its previous conduct where that conduct amounts to a concealment or misrepresentation of material fact, unknown to the party claiming estoppel, and where that conduct was motivated by the intention or expectation that it would be acted upon by the adverse party who does in fact rely thereon in good faith in prejudicially changing its position. Heuer v. Heuer, 152 N.J. 226, 237, 704 A.2d 913 (1998); Carlsen v. Masters, Mates & Pilots Pension Plan Trust, 80 N.J. 334, 339, 403 A.2d 880 (1979). Judge Langlois concluded, as is fully supported by the record, including Charter Oak's own documents, that beyond any genuine issue of material fact, Charter Oak had deliberately induced State Farm to tender its policy limits and to forego its right to seek a new trial or an appeal intending all the while, contrary to State Farm's reasonable understanding, nevertheless to proceed with its bad-faith claim. As State Farm asserts, had it been given any inkling of Charter Oak's intention, it would never have relinquished its right to challenge the liability verdict, thereby surrendering its opportunity to mitigate, if not altogether to avoid, both its and Charter Oak's damages. These findings clearly satisfy the elements of equitable estoppel.
We are, moreover, in entire agreement with Judge Langlois' conclusion, for the reasons she stated, that the record does not support, as a prima facie matter, a bad-faith failure by State Farm to settle the plaintiffs' claims. Not only was its declination to make any other than an unacceptable nominal offer reasonable under the circumstances, but Charter Oak's attorney was actively involved in the litigation for a year before trial, enabling Charter Oak to make its own evaluation of settlement possibilities and to initiate such action as it deemed necessary and appropriate in its own protection. It cannot now lay the failure of settlement prior to the liability trial at State Farm's door. The failure was at least equally its own.
Finally, we reject as entirely without merit Charter Oak's argument that Judge Langlois mistakenly exercised her discretion in requiring a supersedeas bond pending appeal. R. 2:9-6. We see no reason for Charter Oak to be excepted from the requirement.
The summary judgment dismissing the complaint in its entirety is affirmed.
NOTES
[1] While the precise issue of an excess insurer's right of subrogation to the primary insurer's alleged legal malpractice action against its own attorney has not been considered in this jurisdiction, it has arisen in seven others, three of which reject the cause of action and four of which permit it. See, rejecting the cause of action, Saint Paul Ins. Co. of Bellaire, Texas v. AFIA Worldwide Ins. Co., 937 F.2d 274, 279 (5th Cir.1991)(applying Louisiana law); Continental Cas. Co. v. Pullman, Comley, Bradley & Reeves, 929 F.2d 103, 107 (2d Cir.1991)(applying Connecticut law); American Continental Ins. Co. v. Weber & Rose, P.S.C., 997 S.W.2d 12, 13-14 (Ky.App.1998). See, permitting the cause of action, National Union Ins. Co. v. Dowd & Dowd, P.C., 2 F.Supp.2d 1013, 1019-1027 (N.D.Ill.1998); Allstate Ins. Co. v. American Transit Ins. Co., 977 F.Supp. 197,201 (E.D.N.Y.1997); Atlanta Intern. Ins. Co. v. Bell, 438 Mich. 512, 475 N.W.2d 294, 298-299 (1991); American Centennial Ins. Co. v. Canal Ins. Co., 843 S.W.2d 480, 484-485 (Tex.1992). We further note that while equitable subrogation is a favored remedy and that while we have permitted a claim of equitable subrogation by a damaged non-client party against a malpracticing attorney in a non-litigation context, Chemical Bank v. Bailey, 296 N.J.Super. 515, 687 A.2d 316 (App.Div.), certif. denied, 150 N.J. 28, 695 A.2d 671 (1997), nevertheless we have grave doubts as to the viability of that remedy where, as here, the party seeking subrogation was involved in the litigation and had the ability to protect its own interests.
[2] In rejecting the third-party beneficiary claim, Judge Langlois relied on Petrillo v. Bachenberg, 139 N.J. 472, 483-484, 655 A.2d 1354 (1995), which recognized that there are situations in which an attorney may owe a duty to a non-client, namely where the attorneys or the attorney's clients "know or should know, that the non-clients will rely on the attorney's representations and the non-clients are not too remote from the attorneys to be entitled to protection ...." and may therefore be deemed to "invite or acquiesce in the non-client's reliance." Judge Langlois concluded that the element of reliance was not present here because of the excess carrier's active involvement in the litigation in protection of its own interests.