914 A.2d 854 (2007)
390 N.J. Super. 135
Eric A. KRANZ, Plaintiff-Appellant,
v.
Arthur H. TIGER, M.D., Arthur H. Tiger, M.D., P.A., Harold McGovern, Esq., McGovern and Roseman, P.A., Noel Schablik, Esq., Defendants-Respondents, and
Arthur H. Tiger, M.D., and Arthur H. Tiger, M.D., P.A., Third-Party-Plaintiffs,
v.
Harold McGovern, Esq., McGovern and Roseman, P.A., and Noel Schablik, Esq., Third-Party Defendants.
Superior Court of New Jersey, Appellate Division.
Argued January 9, 2007.
Decided February 1, 2007.
*856 Andrew J. Kyreakakis, Bloomfield, argued the cause for appellant.
Craig S. Combs, Morristown, argued the cause for respondents Arthur H. Tiger, M.D., and Arthur H. Tiger, M.D., P.A. (Giblin and Combs, attorneys; Mr. Combs, on the brief).
Mark M. Tallmadge argued the cause for respondents Harold McGovern and McGovern and Roseman, P.A. (Bressler, Amery & Ross, attorneys; Mr. Tallmadge and Diana C. Manning, Florham Park, on the brief).
Maxwell L. Billek, Edison, argued the cause for respondent Noel Schablik (Billek and Yesalonis, attorneys; Michael L. Lazarus, on the brief).
Before Judges COBURN, AXELRAD and GILROY.
The opinion of the court was delivered by
COBURN, P.J.A.D.
Plaintiff Eric A. Kranz filed a negligence action against James and Mary Mongey for personal injuries he suffered as a result of a fall on their property. Representing him in that action were defendants Harold McGovern and Noel Schablik. After jury selection, Kranz agreed to a $500,000 settlement solely because he understood that defendant Arthur H. Tiger, M.D., his only orthopedic expert, would not be available to testify. Without Tiger plaintiff could not prove that any of his injuries were caused by the accident.
Plaintiff then pursued this action against Tiger, McGovern, and Schablik, contending primarily that their negligence in communicating *857 with each other was the cause of Tiger's unavailability and plaintiff's acceptance of the settlement. He chose to present his case by the method known as a suit-within-a-suit, seeking damages for the difference between the settlement and the judgment he probably would have obtained had the underlying case been tried to conclusion.
At the close of all the evidence, defendants moved for directed verdicts pursuant to R. 4:40-1. In granting the defense motions, the judge assumed that the underlying case was sufficient for presentation to a jury and that Tiger had rendered a report for plaintiff indicating that his orthopedic injuries were causally related to the accident and had left him totally and permanently disabled. No defendant contends that the judge erred in making those findings. The judge then ruled for defendants on the following grounds.
As to Tiger, the judge found that although "he may have arguably breached [his] duty by reason of negligent scheduling communications from his office" with plaintiff's counsel, he was not liable as a matter of law because "the case settled," "the settlement of $500,000 was reasonable as a matter of law," and therefore plaintiff "failed to prove any damages."
As to the attorneys, the judge found that they "truly believed they lost their medical expert," and that given the amount of insurance available, one million dollars, and all the other difficulties presented by the case as to liability and damages, the settlement they negotiated with plaintiff's approval was reasonable. The judge also rejected plaintiff's claim that the attorneys were negligent in failing to have videotaped Tiger's testimony for presentation to the jury in case he became unavailable for any reason.
Plaintiff appeals, and we reverse and remand for the following reasons. Although the attorneys may have truly believed Tiger had become unavailable, the issue was not what they honestly believed; rather, it was whether they acted reasonably in forming and acting on that belief. Although the settlement may have been reasonable, given all the circumstances as perceived by the attorneys, that too was not the issue as to any of the defendants; rather, the issue was whether plaintiff, but for defendants' negligence, would have obtained a judgment in excess of the settlement had the case gone to trial.

I
Given the posture of this case and the arguments made, we need not describe the facts of the accident or the complex medical evidence. It suffices to say that although the case was a somewhat difficult one on liability and on the extent of plaintiff's injuries caused by the accident, those were all issues that would probably have been submitted to a jury if the case had not settled. No defendant argues otherwise, and the judge properly assumed that to be the case. But before turning to the critical evidence respecting the settlement, we note that at this trial plaintiff presented psychiatric evidence that he was totally disabled psychologically as a result of the accident and evidence that his lost income exceeded $580,000. That additional evidence would have been offered in the trial of the underlying action, but it depended on the jury accepting Tiger's testimony as true, assuming that he testified in accordance with his report. We also note that over objection defendants were permitted to introduce extensive evidence of the settlement negotiations and of the reasonable value of the settlement obtained.
Plaintiff filed his complaint against the Mongeys in 1994, but their intervening bankruptcy delayed the proceedings until *858 June 1999. On June 22, 1999, the presiding judge conducted a case management conference and set the trial date for September 13, 1999. Two days later, he wrote to counsel, stating that "the case will not be adjourned again, especially [if] an expert is unavailable." He suggested that the testimony of all experts should be videotaped, and reiterated that the case will not be adjourned "because an expert is unavailable no matter what the reason."
McGovern testified that he and Schablik had agreed that McGovern would be responsible for notifying Tiger of the trial date and when his testimony would be needed, and Schablik would notify everyone else. McGovern said that he called Tiger on or about September 10 and again on September 15 and 17, 1999. He did not specify whether he spoke to Tiger or to someone in his office. On September 17, he spoke with Roxanne, who worked for Tiger, managing his schedule, and informed her that a jury had been selected and that he wanted the doctor to come to court on Tuesday, September 21 at 1:30 p.m.
On Monday September 20, McGovern again called Roxanne to tell her the case had not settled and that Tiger would be needed the next day at 1:30 p.m. Later on that day, while he was preparing Kranz for the trial, McGovern said he received "a message from [his] secretary that a call has just come in, right, that the doctor is not available, adjourn the case." McGovern said he then called Roxanne and had the following conversation with her:
I said, you know, what's going on, and I rehashed what had happened on Friday, making the arrangements with her for Tuesday at 1:30 and the fee and how it would be paid. She advised me, Mr. McGovern, I've been instructed to give you that message; the doctor is away; he's not here. I said, Roxanne, this is disastrous, this is terrible. This is an old case; it's try or dismiss; this is a man who's hurt seriously, very seriously. . . . We have got to do something about this; is there any way that I can talk to the doctor to explain to him our predicament? She said, Mr. McGovern, I don't know whether I'm going to hear from him anymore; I don't know whether that's possiblevery sympathetic, I mean, God bless herbut I'll try. And I said do me a favor; I said, we're waiting here, would you call me back one way or the other; please get back to me.
Okay. In all fairness, the phones weren't the best that day and I don't know whether it was the weather or not. It took me a while to get to her. She made clear that he was gone. He's [sic] wasn't just out of the office today because of the religious holiday. I don't believe at that time that she mentioned that he's gone for two weeks or not. I'm just not sure.
McGovern said he was convinced that Tiger would not come to testify. Based on that conclusion, he advised Kranz, who had listened to McGovern's end of the above telephone conversation, to settle. McGovern called Schablik to discuss the matter, and they agreed that Schablik should immediately try to settle the case.
But then McGovern admitted that after talking to Schablik, he was still "waiting for the call back" from Roxanne, which he had requested during their first conversation. At 3:40 p.m., which was well before Schablik settled the case, McGovern's office received a phone call from Roxanne, and McGovern was handed a message regarding that call prepared by someone in his office. The message read "3 40 Roxanne of Dr. Tiger'sDr. Tiger called in, he is unavailable to talk to because of the *859 holiday. Please call him tom after 10 am." The holiday was Yom Kippur.
McGovern testified that after receiving that message he
thought either they were going to get me some phone number to get to him orI knew Dr. Tiger had a vacation place in Nantucket from my previous times in his office. . . . So I figured, you know, maybe he's in Nantucket and maybe somehow we'll talk about it and if you can get a plane down or scoot by, orjust didn't know.
But McGovern later testified that he assumed he was to call the doctor at his office the next day. He also said that he showed the message to Kranz and that they then called Schablik and told him to settle the case for whatever he could get. He further testified that he had alerted his staff to look for the message he expected to receive from Roxanne, and that when it was brought to him he "immediately tried to call Roxanne." He said that when he called, he got the answering machine because he placed the call after 4:30 p.m. He did not say when he got Roxanne's message.
McGovern testified that if the case went perfectly at trial, he expected a jury verdict of between one million and two million dollars, and that if it went reasonably well, he thought a likely verdict would be one million dollars.
Kranz testified that he did not see the 3:40 p.m. message, having left McGovern's office before it arrived, and that no one told him about it the next day. Although Kranz admitted that he authorized the lawyers to settle his case for what they could get, he did not believe Tiger was unavailable and thought the lawyers were telling him that "as a leverage to get [him] to agree to a settlement that they wanted to get in place. . . ." He was very angry about the turn of events, and both McGovern and Schablik confirmed that. When he arrived home, Kranz said he called the doctor's office a number of times and was told on each occasion that the doctor would be in the next day.
The next day, Kranz confronted McGovern with what he had been told by Tiger's office. But when Kranz then placed calls to the doctor's office he was told Tiger was on vacation. McGovern and Schablik listened in to the calls, but neither attempted to speak to the office or to Tiger. After that the settlement was placed on the record, with the notation that Kranz was only settling because Tiger was unavailable.
According to Tiger, he had informed the lawyers that he would not be working on Yom Kippur and that he was leaving for vacation on September 22, but that he would testify, if needed, on September 21 at 1:30 p.m., as they had requested. On Monday September 20, in the middle of the afternoon, he called Roxanne, who died on October 7, 1999, but was then managing his schedule. She said McGovern wanted to speak with him, and he directed her to tell McGovern that he could call him the next morning. He said he had Kranz's file with him the next day, and that he was attending to patients that morning but was available to testify in the afternoon. He then said this:
Tuesday came, I heard nothing. I had no return call from Mr. McGovern. I'm very experienced in testifying in court. I've been doing this for a long time. It's generally the attorney who's down at the courthouse. He knows what's happening, and in order for me to go down to the courthouse, the attorney has to call me, and I left that specific message for Mr. McGovern to call me, and I expect the attorney to keep in touch with me.
*860 Since he did not hear from McGovern, he assumed the case settled.
Schablik testified that Tiger's reputation in the community of trial lawyers was that testifying in court "was a large part of his practice and [that he] would make himself available when needed." He did not indicate that McGovern told him about the 3:40 p.m. message from Roxanne, but McGovern had testified that they did discuss it. He said that he discussed the implications of Tiger not appearing with McGovern and Kranz and that Kranz agreed to have the case settled for whatever he could get. Schablik then settled the case for $500,000 on Monday evening.

II
We begin our analysis by stating the governing principles of law. The most common way to prove the harm inflicted by malpractice or other misconduct that adversely affected the outcome in the underlying action is a suit-within-a-suit. Garcia v. Kozlov, Seaton, Romanini, & Brooks, P.C., 179 N.J. 343, 358, 845 A.2d 602 (2004). Plaintiff's burden is to prove by a preponderance of the evidence that but for the malpractice or other misconduct, "`(1) he would have recovered a judgment in the action against the main defendant, (2) the amount of that judgment, and (3) the degree of collectibility of such judgment.'" Ibid. (quoting Hoppe v. Ranzini, 158 N.J.Super. 158, 165, 385 A.2d 913 (App.Div.1978)).
When the third element, the degree of collectability, is at issue, the case should be bifurcated, and the "questions of malpractice and the amount of the judgment that would have been recoverable" in the underlying action "should be tried first." Hoppe v. Ranzini, 158 N.J.Super. 158, 170, 385 A.2d 913 (App.Div.1978). In that trial, proof of the defendant's wealth or the amount of insurance coverage would be inadmissible. Ibid. If plaintiff obtains a favorable verdict, the defendants "may move for a trial as to the collectibility of the judgment." Ibid. In that proceeding, which generally should take place before the same jury, the burden of proof of non-collectability is on defendants. Id. at 170-71, 385 A.2d 913.
When plaintiff has settled the underlying action, the measure of damages is the difference between the settlement and the amount of money that would have been obtained by judgment. Spaulding v. Hussain, 229 N.J.Super. 430, 444-45, 551 A.2d 1022 (App.Div.1988).
Although a suit-within-a-suit is not the only course, Garcia, supra, 179 N.J. at 358-361, 845 A.2d 602, it is the course followed by plaintiff in this case, and no one argues that he was not entitled to do so.
Plaintiff's action against Tiger was based on negligence and breach of contract. "Our courts have recognized, on contract principles, the enforceability of a treating physician's affirmative undertaking to testify." Spaulding, supra, 229 N.J.Super. at 440, 551 A.2d 1022. And our courts have also recognized that the action for failure to appear may be based on negligence. Id. at 437-41, 551 A.2d 1022. The physician's duty is clear:
[He] is not at liberty to ignore with impunity the basic obligation of rendering a reasonable modicum of litigation assistance. Nor is he free, without compelling professional justification, to renege on a promise, reasonably and detrimentally relied upon by his patient, to render specific litigation assistance [such as testifying in court].
[Id. at 441, 551 A.2d 1022.]
Plaintiff's action against McGovern and Schablik was based on negligence or *861 professional malpractice, which has been defined as follows:
Legal-malpractice suits are grounded in the tort of negligence. The elements of a cause of action for legal malpractice are (1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney, (2) the breach of that duty by the defendant, and (3) proximate causation of the damages claimed by the plaintiff.
[McGrogan v. Till, 167 N.J. 414, 425, 771 A.2d 1187 (2001) (citations omitted).]
In Passanante v. Yormark, 138 N.J.Super. 233, 239, 350 A.2d 497 (App.Div.1975), certif. denied, 70 N.J. 144, 358 A.2d 191 (1976), we described a litigation attorney's duty to his client in this manner:
That obligation encompassed the taking of any steps reasonably necessary in the proper handling of the case. It included, of course, the duty of investigating the facts, formulating a litigation strategy and filing within a reasonable time any action necessary to effectuate recovery.
Ordinarily, expert testimony is required in a legal malpractice case. But when the attorney's "duty is so basic that it may be determined by the court as a matter of law," expert evidence is not required to establish the attorney's duty of care. Brizak v. Needle, 239 N.J.Super. 415, 429, 571 A.2d 975 (App.Div.), certif. denied, 122 N.J. 164, 584 A.2d 230 (1990). In other words, "[e]xpert testimony is not required in legal malpractice cases where the issues are not `beyond the knowledge of the average person,' or are `within the ordinary knowledge and experience of laymen.'" Id. at 431-32, 571 A.2d 975 (citation omitted). Or, as the Court put it in Rosenberg v. Cahill, 99 N.J. 318, 325, 492 A.2d 371 (1985), "[t]he most appropriate application of the common knowledge doctrine involves situations where the carelessness of the defendant is readily apparent to anyone of average intelligence and ordinary experience."
We have also observed that "expert testimony may not be necessary to establish proximate cause in every legal malpractice case, particularly where the causal relationship between the attorney's legal malpractice and the client's loss is so obvious that the trier of fact can resolve the issue as a matter of common knowledge." Sommers v. McKinney, 287 N.J.Super. 1, 11, 670 A.2d 99 (App.Div.1996).
In judging whether plaintiff's proofs were adequate, the procedural posture of the case is critical. Defendants won on their motions for a directed verdict. When those motions were presented, the judge was obliged to apply the test set forth in Dolson v. Anastasia, 55 N.J. 2, 5-6, 258 A.2d 706 (1969) (citations omitted):
[T]he test is . . . whether "the evidence, together with the legitimate inferences therefrom, could sustain a judgment in . . . favor" of the party opposing the motion, i.e., if, accepting as true all the evidence which supports the position of the party defending against the motion and according him the benefit of all inferences which can reasonably and legitimately be deduced therefrom, reasonable minds could differ, the motion must be denied. The point is that the judicial function here is quite a mechanical one. The trial court is not concerned with the worth, nature or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably to the party opposing the motion.
Plaintiff's primary claim of negligence was that his attorneys and the doctor selected by them failed to communicate adequately on the doctor's appearance at the trial. He also claimed breach of contract by the doctor. More specifically, he *862 claimed that as a result of the miscommunication, the attorneys wrongly assumed that the doctor was not available to testify when he in fact was available, and the doctor contributed to that assumption by failing to reasonably and accurately communicate with the attorneys personally or through his office staff.
Viewing the evidence under the test of Dolson v. Anastasia, as we must, a reasonable jury could have found that Tiger negligently or intentionally permitted his scheduling manager, Roxanne, to tell McGovern that he had left for vacation, and that when he thereafter learned that McGovern was upset and wanted to speak with him, he negligently failed to have Roxanne clearly advise McGovern that he would be available to testify the next day. In this case, the trial judge found that there was sufficient evidence to go to the jury on the issues of Tiger's breach of contract and negligence. Since we agree with that determination, and since, for reasons to be discussed below, we are satisfied that the settlement had no bearing on this aspect of the case, plaintiff is entitled to retry his case against Tiger.
A reasonable jury also could have found that McGovern unreasonably misunderstood the last message from Roxanne, assuming without justification or further checking that Tiger would be unavailable, and that McGovern failed to respond promptly to the last message from Roxanne or to advise his client of the contents of the message.
Had McGovern called plaintiff with that information, plaintiff, who had learned by telephone calls from his home to Tiger's office that Tiger would be in the next day, would have had the opportunity to withdraw his previously given authorization to settle the case, an authorization given solely because McGovern had told him Tiger would not be available to testify. Although McGovern said he believed the doctor was away, he also testified that he assumed from the last message that he was to call the doctor the next day at his office, which, of course is inconsistent with a belief that the doctor was away.
McGovern was obviously obliged to take reasonable steps to arrange for Tiger's presence at the trial, and the jury could have found, without the benefit of expert testimony, that McGovern simply failed to communicate adequately with Tiger, and that his continued assumption that Tiger would be unavailable was unreasonable in light of the second message from Roxanne, which indicated that McGovern could speak with Tiger the next morning.
Although the situation is somewhat less clear factually as to Schablik, the jury could have found that McGovern had advised Schablik of the last message from Roxanne, that Schablik was negligent in failing to realize that the message suggested that the doctor would in fact be available to testify, and that Schablik was negligent in thereafter settling the case that evening without further investigating the supposed problem and without informing plaintiff about this aspect of the status of the matter. See Ziegelheim v. Apollo, 128 N.J. 250, 261, 607 A.2d 1298 (1992), which held that a "lawyer is obligated to keep the client informed of the status of the matter . . . and is required to advise the client on the various legal and strategic issues that arise."
The attorneys argue that their understanding of the messages from Roxanne was vindicated by the calls made to Tiger's office the next day, when Tiger's office supposedly told Kranz that the doctor was away, although that was not true. But by then the case had already been settled, and thus the information received was irrelevant. Furthermore, had the *863 jury considered this aspect of the case, it might well have found the lawyers negligent for their failure to attempt to speak directly with the doctor or his office. Had they done so, they might well have determined that Tiger was in his office waiting for their call, and might have then argued to the trial court that the case had not been settled the night before or that a basis existed for not enforcing the settlement. Our indication of bases on which a jury might find defendants at fault is not intended to limit plaintiff's proofs or argument at the retrial. Depending on precisely what was said during the conversations among Tiger, Roxanne, McGovern and Schablik, there may be additional grounds for finding each of the defendants at fault.
We turn next to the trial judge's determination, to which plaintiff objected, and on which defendants continue to rely, that the settlement of the underlying action was relevant to their liability in relation to the issue of proximate cause. The trial judge held that as a result of the settlement, which he concluded was reasonable as a matter of law, plaintiff failed to prove that defendants' negligence was a proximate cause of any damages. But that ruling is inconsistent with the fundamental principle, enunciated above, that the measure of plaintiff's damages in a suit-within-a-suit case is the difference between the settlement reluctantly accepted and the amount plaintiff would have recovered (estimated by McGovern to be between one million and two million dollars) if the underlying case had gone to judgment. Garcia, supra, 179 N.J. at 358, 845 A.2d 602; Spaulding, supra, 229 N.J.Super. at 444-45, 551 A.2d 1022.
Although defendants continue to maintain that under Garcia the settlement evidence was properly admitted, we disagree.
First, we take note of N.J.R.E. 408, which provides as follows:
When a claim is disputed as to validity or amount, evidence of statements or conduct by parties or their attorneys in settlement negotiations . . . including offers of compromise . . . shall not be admissible to prove liability for, or invalidity of, or amount of the disputed claim. Such evidence shall not be excluded when offered for another purpose; and evidence otherwise admissible shall not be excluded merely because it was disclosed during settlement negotiations.
Under that rule, admission of testimony regarding plaintiff's willingness at one point to accept $500,000 to settle his case, and the opinion evidence that that was a reasonable settlement, was improper because it obviously had the potential of prejudicing plaintiff's claim to the jury that he was entitled to damages far exceeding that amount.
In Garcia, as a result of the attorney's malpractice plaintiff reluctantly accepted a settlement of $87,000, while the jury was asked by plaintiff to determine, and did determine, that the reasonable settlement value of plaintiff's claim absent the malpractice was $225,000. Garcia, supra, 179 N.J. at 356, 845 A.2d 602. And in Garcia the defendant attorneys contended that "plaintiff willingly and reasonably accepted $87,000 as the full value of the case." Id. at 362, 845 A.2d 602. In other words, the reasonableness of the settlement obtained was an issue in Garcia only because of the method plaintiff employed to pursue his case. But unlike Garcia, where plaintiff was trying to prove his case, not by a suit-within-a-suit, but by a comparison of the actual settlement with what the settlement should have been, here, plaintiff was seeking the difference between the settlement he reluctantly accepted and the judgment he might have obtained, as is allowed in a *864 suit-within-a-suit. Although the defendants claimed that $500,000 represented the full settlement value of this case, they do not contend that plaintiff willingly accepted it. To the contrary, they acknowledge that he only accepted it because he was told that his case could not proceed at all without Tiger's testimony.
Garcia is clearly distinguishable because it was not a malpractice case involving the suit-within-a-suit theory of liability and damages, and it provides no support for defendants' position. The only relevance of the settlement in this case is that the jury's verdict would have been reduced by that amount. Although the jury needed to be informed that the underlying action had ended with a settlement, it did not need to know, and, if the case had been properly submitted, would not have known, pursuant to a proper application of N.J.R.E. 408, the amount of that settlement.
Since the case must be retried, comment on some additional issues raised by plaintiff may be useful.
Plaintiff contends that the trial judge erred in permitting the report of Dr. John J. Caronna, a neurologist, to be admitted into evidence. Although Caronna had been retained for plaintiff in the underlying action, the defendant attorneys chose not to serve his report and did not intend to call him as a witness. At trial, and on appeal, defendants contend that Caronna's opinions were not offered for their truth but as bearing on the factors they considered in determining the value of plaintiff's case, which went to the ultimate reasonableness of the settlement. Since we have ruled that those matters were not relevant here, there should be no reference to Caronna in the new trial.
Next, plaintiff contends that the trial judge erred in denying his request to have Dr. Paul Vessa testify. But defendants never intended to call Dr. Vessa in the underlying action, and therefore his evidence was inadmissible in the context of a trial-with-a-trial of the underlying case.
Next, plaintiff argues that the trial judge erred in permitting defendants to call Dr. Stephen Sachs because he was not scheduled to be a witness in the underlying case. However, defendants called Dr. Sachs for a very limited purpose; namely, to rebut plaintiff's claim that Tiger had fabricated his testimony at this trial, and plaintiff does not argue that the evidence was inadmissible on that issue. We perceive no error on this point based on the record below.
Next, plaintiff contends that Tiger should have been judicially estopped from offering testimony in this trial that was different from what he would have testified to in the underlying case had it been tried. We disagree. Judicial estoppel "bar[s] a party to a legal proceeding from arguing a position inconsistent with one previously asserted." N.J. Dep't of Law & Pub. Safety, Div. of Gaming Enforcement v. Gonzalez, 142 N.J. 618, 632, 667 A.2d 684 (1995) (quoting N.M. v. J.G., 255 N.J.Super. 423, 429, 605 A.2d 709 (App.Div.1992)). "Because the doctrine of judicial estoppel only applies when a court has accepted a party's position, a party ordinarily is not barred from taking an inconsistent position in successive litigation if the first action was concluded by a settlement." Kimball Int'l, Inc. v. Northfield Metal Prods., 334 N.J.Super. 596, 607, 760 A.2d 794 (App.Div.2000), certif. denied, 167 N.J. 88, 769 A.2d 1051 (2001). Not only was Tiger not even a party in the underlying action, which of course ended with settlement, but there is also no way of knowing, had he testified, whether, after *865 cross-examination, his evidence would have been any different from that given in this trial. Therefore, we are satisfied that the trial judge did not err in permitting Tiger to testify as he did.
The remaining arguments offered by plaintiff are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).
Reversed and remanded for trial.