**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5631-16T3

JAMES J. POLIDORO,

     Plaintiff-Appellant,

v.

MARIA R. ALVAREZ-PRIETO,
M.D., NEUROLOGY & PAIN
MANAGEMENT TREATMENT
CENTER, PC, NEUROLOGY
& PAIN TREATMENT CENTER,
INC., NEUROLOGY & PAIN
MANAGEMENT CENTER, INC.,
and NEUROLOGY CENTER, PC,

     Defendants-Respondents.

_____

Submitted January 8, 2019 – Decided February 1, 2019

Before Judges Yannotti, Gilson and Natali.

On appeal from Superior Court of New Jersey, Law Division, Essex County, Docket No. L-2020-14.

Robert E. Taylor, Jr., attorney for appellants; Jared B. Weiss, on the briefs.

Brach Eichler, LLC, attorneys for defendants (Keith J. Roberts, of counsel and on the brief; Shannon M. Carroll, on the brief).

PER CURIAM

Plaintiff appeals from an order dated June 8, 2017, which granted defendants' motion for summary judgment. Plaintiff also appeals from an order dated August 4, 2017, which denied his motion for reconsideration. We affirm.

I.

This appeal arises from the following facts. On July 4, 2003, plaintiff's vehicle collided with a vehicle driven by S.D.[1] Plaintiff claimed that as a result of the accident he suffered a closed-head injury and cerebral concussion, with post-concussion syndrome, permanent post-traumatic headache syndrome, and cognitive dysfunction and injury.

Plaintiff also claimed that in the accident, he sustained certain orthopedic injuries, including "a mid[-]line disc herniation at the L5-S1 level" of the spine, "bulging annuli at C5-C6 and C6-C7[,] . . . and an anterior disc herniation at T1-T2." In addition, plaintiff claimed temporomandibular joint (TMJ) dysfunction, a nasal fracture, nerve hearing loss, and an injury to his eye.

---

[1] We refer to certain individuals by their initials in order to protect their privacy.

Initially, plaintiff received treatment for the aforementioned injuries by various doctors at several medical facilities. In July 2003, he began treatment with Dr. Enrique Hernandez. At that time, Hernandez and defendant Dr. Maria R. Alvarez-Prieto were married. They were the co-owners of a medical facility where plaintiff was treated.

Plaintiff filed a lawsuit against S.D., seeking damages for the injuries he sustained in the accident, and Hernandez agreed to serve as plaintiff's expert witness. Hernandez wrote several reports, including a report dated March 21, 2005, in which he set forth his diagnoses. Among other things, Hernandez stated that plaintiff's brain and spine injuries were permanent and causally related to the accident.

At some point in 2007, Prieto and Hernandez divorced. As a result, they ceased operating the medical practice together. Prieto formed a new medical practice, and was its sole owner. In April 2008, M.G., who was at the time plaintiff's attorney, learned that Hernandez was either unable or unwilling to testify as plaintiff's expert. Apparently, Hernandez had become disabled and was no longer practicing medicine.

Plaintiff alleges that in early June 2008, he went to Prieto's office in Newark and signed in. Plaintiff claims that during that visit, Prieto performed

3

a neurological evaluation. Plaintiff asserts that during the evaluation, he asked Prieto if she would replace Hernandez and serve as an expert neurologist in his lawsuit. According to plaintiff, Prieto agreed.

Plaintiff asserts that he paid Prieto $500 in cash for the evaluation and preparation of an expert report. He claims Prieto accepted the cash payment personally. Prieto allegedly told plaintiff her fee to testify at trial would be $3000, which would be payable on the day of trial. Plaintiff asserts he agreed to those terms.

Prieto wrote a narrative report, dated June 5, 2008. In the report, Prieto set forth plaintiff's diagnoses, specifically, closed-head injury/cerebral concussion with prominent post-concussion syndrome and permanent post-traumatic headache syndrome, contusion/sprain of the cervical spine, disc herniation at the L5-S1 level of the spine, and bilateral TMJ syndrome.

On June 12, 2008, M.G. forwarded Prieto's report to S.D.'s attorney. In an accompanying letter, M.G. stated that Hernandez was unavailable, but Prieto had performed a "re-exam" and issued a narrative report. S.D.'s attorney acknowledged receipt of Prieto's report.

Thereafter, M.G. filed a motion to be relieved as plaintiff's counsel. The court considered the motion in October 2008. M.G. informed the court that

Prieto had agreed to serve as plaintiff's expert witness. Thereafter, plaintiff retained M.M. to represent him in the lawsuit. The court scheduled the matter for trial on Monday, March 9, 2009.

M.M. wrote to Prieto and advised her of the scheduled trial date. M.M. testified at his deposition that he was not sure he sent the letter to Prieto, but he followed up with Prieto's office to confirm she would be testifying. M.M. further testified that he spoke with someone at Prieto's office on March 6, 2009, the Friday before the scheduled trial date.

According to M.M., someone in Prieto's office advised him that Prieto was not willing to testify because she did not treat plaintiff. M.M. wrote that day to Prieto and stated that her refusal to testify had "seriously jeopardized [plaintiff's] case." M.M. threatened to pursue an action against Prieto "and recover whatever damages may be appropriate."

On March 9, 2009, plaintiff and M.M. appeared in court for the trial. Initially, M.M. did not inform S.D.'s attorney that Prieto would not be testifying. He did not want to do so until after he attempted to settle the case. M.M. did not request an adjournment on the basis of Prieto's unavailability, nor did he attempt to obtain another expert. The parties discussed settlement. Plaintiff agreed to accept $25,500, and the case was settled.

A-5631-16T3

In May 2011, plaintiff filed a pro se complaint against Prieto, Hernandez, and Prieto's medical practice in the United States District Court for the District of New Jersey, claiming the court had subject matter jurisdiction under 28 U.S.C. § 1332 due to the diversity of citizenship of the parties. The court found that plaintiff had not met his burden of establishing that the court had jurisdiction. The court dismissed the complaint, but allowed plaintiff to present additional facts to establish jurisdiction. Apparently, he did not do so.

Instead, plaintiff filed this action against Prieto, asserting claims of negligence and breach of contract, along with other causes of action. Later, plaintiff amended the complaint to include claims against the other defendants, which include Prieto's medical practice and other medical practices with which she has been associated. During discovery, Prieto was deposed. She testified that she did not personally examine plaintiff. She stated that she could not testify at his trial as to Hernandez's findings, and she did not make her own diagnoses. Prieto also said that she did not provide an opinion on causation or the permanency of his injuries.

In her answers to plaintiff's request for admissions, Prieto denied that she charged plaintiff $500 after he asked her to perform an evaluation and prepare a report. She denied that plaintiff agreed to pay her $3000 if she appeared and

testified at the trial of his lawsuit against S.D. She also denied that she took a history from plaintiff or examined him.

After the completion of discovery, defendants filed a motion for summary judgment, which plaintiff opposed. The motion judge heard oral argument and on June 8, 2017, placed an oral decision on the record, in which he concluded defendants were entitled to summary judgment. The judge noted that although Prieto had written a narrative report, she had merely summarized Hernandez's earlier findings and diagnoses.

The judge stated that Prieto did not make any findings of her own. The judge noted that in the report, Prieto provided final diagnoses for plaintiff, but they were based on a review of the medical records. The judge also noted that Prieto did not offer an opinion, within a reasonable degree of medical certainty, as to the cause or permanency of plaintiff's injuries. The judge stated that without such an opinion, Prieto's expert testimony would have been inadmissible.

In addition, the judge noted that if Prieto had appeared at the trial, she would have testified that she never examined plaintiff, and she could not testify as to Hernandez's findings. The judge also determined that, even if Prieto had

7

agreed to serve as plaintiff's expert witness, her later refusal to testify did not cause plaintiff to sustain any damages.

The judge entered an order dated June 8, 2017, which granted defendants' motion for summary judgment and dismissed the complaint with prejudice. Thereafter, plaintiff filed a motion for reconsideration of the June 8, 2017 order. On August 4, 2017, the judge denied the motion. This appeal followed.

## II.

On appeal, plaintiff argues that the order granting summary judgment should be reversed because: (1) he "established a prima facie case [of] negligence and breach of contract" by Prieto, which should be heard by a jury; (2) "the trial court based its decision [on] an incorrect burden of proof as to [Prieto]'s conduct" and her qualifications to testify as a witness in the "case within a case," and (3) the court erred by barring Prieto's testimony before weighing her "conduct" as an expert witness.

We review an order granting summary judgment by applying the same standard that the trial court applies. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016) (citing Mem'l Props., LLC v. Zurich Am. Ins. Co., 210 N.J. 512, 524 (2012)). Summary judgment should be granted when the evidence before the court on the motion "show[s]

that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c).

Furthermore, "[a]n issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with the legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." Ibid. "If there exists a single, unavoidable resolution of the alleged disputed issue of fact, that issue should be considered insufficient to constitute a 'genuine' issue of material fact for purposes of Rule 4:46-2." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)).

The New Jersey "courts have recognized, on contract principles, the enforceability of a treating physician's affirmative undertaking to testify." Spaulding v. Hussain, 229 N.J. Super. 430, 440 (App. Div. 1988) (citing Battista v. Bellino, 113 N.J. Super. 545 (App. Div. 1971); Stanton v. Rushmore, 11 N.J. Misc. 544 (Sup. Ct. 1933), aff'd, 112 N.J.L. 115 (E. & A. 1933)). Our courts also have recognized that in certain circumstances, a claimant can bring a

negligence action against a treating physician who fails to appear for trial. Id. at 437-41.

We have held that "a treating physician has a duty to render reasonably required litigation assistance to his patient." Id. at 440. Although the outer limits of that duty are not clear, a treating physician is not "free, without compelling professional justification, to renege on a promise, reasonably and detrimentally relied upon by his patient, to render specific litigation assistance." Id. at 441.

As stated previously, in this case, plaintiff asserted claims against Prieto for breach of contract and negligence, based on her failure to appear and testify as plaintiff's expert witness in his lawsuit against S.D. There are genuine issues of material fact as to whether Prieto ever treated plaintiff, and whether she agreed to testify as his expert in the lawsuit.

Assuming, however, that Prieto did, in fact, evaluate plaintiff and agree to testify on his behalf in his lawsuit against S.D., and that she failed to do so "without compelling professional justification," we are convinced that the motion judge correctly determined that plaintiff's claims failed as a matter of law. Here, plaintiff alleges that because Prieto failed to testify, he settled his

claims against S.D. for an inadequate sum.  However, plaintiff failed to present sufficient evidence to establish proximate cause or damages.

"The most common way to prove the harm inflicted by . . . malpractice is" the "suit within a suit" approach, "in which a plaintiff presents the evidence that would have been submitted at a trial had no malpractice occurred."  Garcia v. Kozlov, Seaton, Romanini & Brooks, PC, 179 N.J. 343, 358 (2004).  In such a proceeding, the "plaintiff has the burden of proving by a preponderance of the evidence that (1) he would have recovered a judgment in the action against the main defendant, (2) the amount of that judgment, and (3) the degree of collectability of such judgment."  Ibid. (quoting Hoppe v. Ranzini, 158 N.J. Super. 158, 165 (App. Div. 1978)).

In some situations, however, the "suit within a suit" approach may not be appropriate, particularly where the underlying action was settled or "cannot [be] accurately reconstruct[ed.]"  See id. at 358-59.  In those situations, the trial court may, in its discretion, allow the plaintiff to prove proximate cause and damages "through the use of expert testimony as to what as a matter of reasonable probability would have transpired at the original trial."  Id. at 361 (quoting Lieberman v. Emp'rs Ins. of Wausau, 84 N.J. 325, 344 (1980)).

Furthermore, in a contract action, "[t]he purpose of compensatory damages is to put the injured party in as good a position as he would have been in if performance were rendered as promised." St. Louis, LLC v. Final Touch Glass & Mirror, Inc., 386 N.J. Super. 177, 188 (App. Div. 2006) (citing 525 Main Street Corp. v. Eagle Roofing Co., 34 N.J. 251, 254 (1961)). Damages cannot be awarded "based upon mere speculation." See Lewis v. Read, 80 N.J. Super. 148, 174 (App. Div. 1963). Damages need not be proved "with exactitude" but they must be established "with such certainty as the nature of the case may permit." Lane v. Oil Delivery, Inc., 216 N.J. Super. 413, 420 (App. Div. 1987).

In Kelly v. Berlin, 300 N.J. Super. 256, 260-61 (App. Div. 1997), the plaintiff alleged he settled a lawsuit arising from an automobile accident for an inadequate amount because the defendant physicians did not diagnose a lower back injury. We held expert testimony was necessary to establish the plaintiff's damages. Id. at 269. We stated:

> Without expert testimony, a jury simply does not have the knowledge, training, or experience to decide the settlement value of plaintiff's claim. While juries may generally determine damages in the ordinary case, the trial court properly concluded that laypersons do not have the knowledge, from their common experience, to evaluate and determine damages in a case of this kind, that is, to determine the difference between the amount

plaintiff actually received in his settlement and the amount he would have received had his lower back condition been made known prior to the settlement.

The many factors that go into a settlement are not within the knowledge of the average juror. An expert in the settlement of claims, such as an experienced torts attorney or an experienced claims adjuster, is necessary to explain the various factors which are taken into consideration in the settlement of a case of this kind. Such an expert could explain which factors are relevant and how they affected this matter to enable the jury to determine whether the defendant doctors' negligence caused plaintiff to settle for a lower amount than he otherwise would have, and, if so, the amount of damages plaintiff sustained as a result. For example, such expert testimony could render a comparison of similar claims in the area, an analysis of how plaintiff's other injuries would have affected the settlement of his lower back injury, an opinion as to the value of plaintiff's lower back injury in light of its projected severity when the case was settled, and an analysis of how legal issues would have affected the settlement amount.

[Id. at 269-70 (citing Duncan v. Lord, 409 F.Supp. 687, 692-93 (E.D.Pa. 1976); Fishman v. Brooks, 487 N.E.2d 1377, 1380-81 (Mass. 1986)).]

Here, plaintiff claims that the amount he received in the settlement of his lawsuit against S.D. was less than the amount he would have received by way of settlement or judgment if Prieto had appeared for trial and testified. However, plaintiff failed to present any expert testimony to support that claim. Without such expert testimony, a jury could not determine whether the amount plaintiff

received in settlement was inadequate and the amount he would probably have received by settlement or judgment if Prieto appeared and testified.

Moreover, plaintiff could not prevail using a "suit within a suit" approach. Plaintiff did not present sufficient evidence to show that he would have secured more by way of settlement or judgment if Prieto had appeared and testified in the underlying action. The record shows that Prieto prepared a report, in which she set forth certain diagnoses, but her report was essentially a summary of the findings previously made by Hernandez. In addition, at her deposition, Prieto stated that she could not testify because she did not examine plaintiff. In her report, she did not provide an opinion as to the permanency of plaintiff's injuries or the causal relationship of the injuries to the motor vehicle accident.

On appeal, plaintiff argues that the motion judge erred by finding Prieto would not have been permitted to testify in the underlying action because the diagnoses set forth in her report are not her own. Plaintiff contends Prieto could have testified regarding the treatment provided at the medical practice she owned, and the diagnoses reached by practitioners in her office. Plaintiff also argues that there was no indication that S.D.'s attorney was going to object to Prieto's testimony.

We are convinced, however, that Prieto's testimony could have been challenged if Prieto had appeared and attempted to testify in the underlying action concerning the findings in her report because she said she never treated or examined plaintiff, and did not render opinions on causation and permanency. Furthermore, even if Prieto had appeared, she would have been a reluctant witness. If called to testify, she would have stated that the diagnoses in her report were not her diagnoses. Therefore, plaintiff failed to present sufficient evidence to establish the damages he allegedly sustained due to Prieto's refusal to appear and testify in the action against S.D.

III.

In support of his argument that the trial court erred by granting summary judgment to defendants, plaintiff relies upon Kranz v. Tiger, 390 N.J. Super. 135 (App. Div. 2007). In that case, the plaintiff sued his former attorneys and expert witness, alleging he settled his case for an inadequate sum after he learned that the expert witness was unavailable to testify. Id. at 140. The plaintiff sought to prove damages using the "suit within a suit" approach. Ibid. The judge dismissed the complaint at trial because the settlement reached in the underlying action was reasonable. Id. at 141.

A-5631-16T3

We reversed the order dismissing the complaint and held that the reasonableness of the settlement was not the measure of the plaintiff's damages. Id. at 150. We stated that the measure of damages was the difference between the settlement and the amount of money that would have been obtained if the underlying action was tried to its conclusion. Id. at 150-51 (citing Garcia, 179 N.J. at 358; Spaulding, 229 N.J. Super. at 444-45). We remanded the matter for a new trial. Id. at 153

Kranz is distinguishable, however, because in that case, the medical expert had prepared a report which addressed causation and permanency, and there was no issue as to the admissibility of the expert's testimony. See id. at 142. Therefore, using the "suit within a suit" approach, the parties could reconstruct the trial in the underlying action, and the jury could determine the amount that the plaintiff would have obtained if the expert had testified and a judgment rendered.

Here, Prieto's report did not address the causation and permanency of plaintiff's injuries, and she insisted she could not offer an opinion on plaintiff's diagnoses because she had not performed a physical examination. This evidence was insufficient for a jury, using the "suit within a suit" approach, to determine

16

the damages that would have been awarded to plaintiff in the underlying action if Prieto had testified. Therefore, plaintiff's reliance upon <u>Kranz</u> is misplaced.

On appeal, plaintiff also relies upon <u>Spaulding</u>. There, the plaintiff brought an action asserting claims for breach of contract and negligence against his treating physician. <u>Spaulding</u>, 229 N.J. Super. at 432. The physician had refused to testify for the plaintiff in a personal injury action, and allegedly caused the plaintiff to settle the case for $75,000, an amount the plaintiff claimed was inadequate. <u>Id.</u> at 435. In the action against the physician, the jury awarded the plaintiff damages of $250,000. <u>Id.</u> at 439.

However, in <u>Spaulding</u>, it was undisputed that the expert was the plaintiff's treating physician, and the evidence supported the jury's finding that the physician had reneged on his promise to provide specific litigation assistance to the plaintiff. <u>Id.</u> at 432, 441. In our opinion, we did not address the question of whether the plaintiff presented sufficient evidence to support the jury's award of damages, which is the key issue in this appeal. Therefore, plaintiff's reliance on <u>Spaulding</u> is misplaced.

We therefore conclude that the trial court correctly determined that plaintiff's claims against Prieto failed as a matter of law because he did not

A-5631-16T3

present sufficient evidence on proximate cause and damages. In view of that decision, we need not address the other arguments raised on appeal.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION