**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1691-17T3

ANGEL LOPEZ,

    Plaintiff-Appellant,

v.

GINARTE, O'DWYER, GONZALEZ,
GALLARDO & WINOGRAD, LLP,
JAMES KRUPKA, ESQ., BRUNO
BRUNINI, ESQ., and JOHN
MEGJUGORAC, ESQ.,

    Defendants-Respondents.

_____

Submitted October 17, 2018 – Decided July 8, 2019

Before Judges Nugent and Reisner.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-0766-15.

Emolo & Collini, Esqs., attorneys for appellant (John C. Emolo, on the brief).

Cooper Levenson, PA, attorneys for respondents (Fredric L. Shenkman, on the brief).

PER CURIAM

This is a legal malpractice action. Plaintiff contends defendants mishandled his personal injury lawsuit. Specifically, he alleges defendants negligently failed to develop evidence and expert testimony concerning the brain injury and economic loss he suffered as the result of a slip and fall accident. Plaintiff claims that due to defendants' negligence, he was forced to settle his claim for a fraction of its value.

The trial court granted defendants' summary judgment motion and dismissed the complaint because plaintiff's malpractice expert did not opine on the settlement value of plaintiff's case if properly prepared. The court also denied plaintiff's motion for reconsideration. Plaintiff appeals. Because plaintiff should have been permitted to prove his damages by presenting to a jury a "case within a case," and because the trial court erred by ruling to the contrary, we reverse and remand for trial.

I.

Construed in the light most favorable to plaintiff as the non-moving party, Petro-Lubricant Testing Labs., Inc. v. Adelman, 233 N.J. 236, 256 (2018), the motion record includes the following material facts.[1] Plaintiff sustained injuries

---

[1] Although we review "the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving

A-1691-17T3

in January 2011 when he slipped on ice and fell on concrete steps as he left a commercial building. Three days after his accident, plaintiff retained defendant law firm ("the Firm") to represent him in a personal injury action. Defendants handled plaintiff's claim for more than three years and nine months and through four trial listings before new counsel ("Superseding Counsel") substituted in for plaintiff. Defendants do not dispute that during the time they represented plaintiff, they did not develop the evidence necessary to present to a jury a damage claim for his brain injury or a damage claim for economic loss.

The motion record shows that when defendants answered for plaintiff the tortfeasor's interrogatories, they possessed medical records from treating physicians diagnosing plaintiff with both soft tissue injuries and cognitive impairments.[2] Yet, in response to an interrogatory requesting a detailed description of the nature, extent, and duration of any and all injuries, defendants answered that plaintiff had "sustained serious injuries to the neck, right shoulder,

---

party," Rule 4:46-2(c), we note that defendants and their experts dispute most of plaintiff's allegations.

[2] We use the term "soft tissue injuries" as it was once used in a statute: "injuries in the form of sprains, strains, contusions, lacerations, bruises, hematomas, cuts, abrasions, scrapes, scratches, and tears confined to the muscles, tendons, ligaments, cartilages, nerves, fibers, veins, arteries and skin of the human body." See Oswin v. Shaw, 129 N.J. 290, 295-96 (1992).

A-1691-17T3

back, and right knee." Defendants delineated plaintiff's soft tissue injuries but did not mention plaintiff's "bifrontal-temporal headaches," "difficulty with his memory," nervousness, depression, or difficulty sleeping – symptoms diagnosed by a neurologist in the same report that discussed plaintiff's soft tissue injuries. Nor did defendants cite in the interrogatory answers the neurologist's provisional diagnosis, which included cerebral concussion, post-traumatic headaches, post-concussional syndrome, and adjustment disorder with depressed mood secondary to plaintiff's fall.

Although plaintiff, when deposed, explained how the brain injury had affected his ability to concentrate and to sleep, and prevented him from doing his job as an IT consultant, defendants did nothing to develop admissible evidence of either the neurological impairment or economic loss claim. Plaintiff also identified witnesses to his accident. Defendants did not attempt to locate and interview or depose the witnesses. They did not attempt to obtain video of his fall from a surveillance camera and they did not attempt to obtain an engineer or safety expert to express an opinion about the condition of the stairs on which plaintiff fell.

Once the discovery end date passed, one of the defendant attorneys advised plaintiff to accept a $15,000 settlement offer, which the attorney thought

A-1691-17T3

would "net" plaintiff $2,500. He was wrong. He did not consider certain medical bills plaintiff had to repay.

When plaintiff refused to settle, an associate of the Firm told plaintiff he would have to pay the experts for their trial testimony. When plaintiff still refused to settle, an associate of the Firm, allegedly acting upon the instruction of a partner, misrepresented to plaintiff that he no longer represented him. Neither the associate nor the Firm had made a motion to withdraw from the case. Despite the misrepresentation, the Firm continued representing plaintiff until Superseding Counsel substituted in.

Superseding Counsel filed a motion to extend discovery so that he could properly develop proofs of plaintiff's injuries and economic loss. The trial court denied the motion. Plaintiff then accepted a $20,000 settlement offer, unable to present proofs to a jury of his brain injury and economic losses. He expressly reserved the right to sue defendants for legal malpractice.

In plaintiff's ensuing legal malpractice action, his malpractice expert issued a report specifying the standards and Rules of Professional Conduct from which defendants deviated. He expressed this, among other opinions: "In light of the fact that [Superseding Counsel's] motion [to extend discovery] was denied plaintiff had no choice but to accept the increased settlement offer that was

negotiated by his new attorneys in the sum of $20,000 and dismiss his case."
The expert continued;

> [T]he defendants' negligence as aforesaid by failing to set forth a past and future loss (sic) wage claim, future medical needs, claims that he had a traumatic brain injury, and providing the experts that are needed to prove same was devastating to the plaintiff's case which caused him to have to accept the sum of $20,000.00 to resolve his case when the case was clearly worth considerably more. <u>The actions and inactions of the various defendants in this case prevented the plaintiff from obtaining a fair and just verdict/settlement.</u>
>
> [(Emphasis added).]

The expert's opinion is amply supported by the facts on the motion record. Plaintiff submitted other expert reports. One expert, a board certified neurologist, detailed the permanent impairment plaintiff suffered from the brain injury caused by his fall. An accountant and forensic consultant computed plaintiff's past and future lost wages, totaling $688,948. That expert also valued the loss plaintiff sustained due to his inability to perform household services: $161,769.

The trial of the malpractice action, scheduled for September 2017, was adjourned by consent to November. In August, defendants filed four motions: the summary judgment motion that is the subject of this appeal; another summary judgment motion based on plaintiff's malpractice expert's alleged

6

failure to opine there was a causal relationship between defendant's errors and omissions and plaintiff's losses; a motion to bar plaintiff's economic expert's testimony as "net"; and a motion to preclude the testimony of two witnesses, plaintiff's expert neurologist and wife, or alternatively, to extend discovery to permit their depositions to proceed. Plaintiff filed a motion to quash certain portions of subpoenas defendants served on its experts, apparently to obtain copies of draft reports.

When oral argument on the motions began, and counsel had entered their appearances, the trial court made the following statement: "Well, there's a whole bunch of motions here. It seems to me, if the main one is granted, then we don't need to hear the others, right?" After demonstrating some confusion about whether there were three or four summary judgment motions, the court clarified that what it meant by the main motion was defendants' motion for summary judgment in the absence of an expert report. The court addressed that motion first, granted it, and denied the remaining motions as moot.

In its oral opinion, the court defined the issue as "whether the plaintiff has presented sufficient evidence as to allow a jury to find in her [sic] favor." Deciding that "the jury must be able to compare the amount that the plaintiff allegedly should have received with the amount that the plaintiff actually

7

received at settlement," and noting the settlement value of a case is beyond the ken of the average juror, the court concluded plaintiff could not prove his case without an expert's opinion as to the increased settlement value of plaintiff's claim attributable to defendant's malpractice. Based on that reasoning, the court granted defendants' summary judgment motion.

Plaintiff responded by submitting a supplemental report from his malpractice expert and moving for reconsideration. The expert explained he did not previously opine on the increased settlement value of the case because he "believe[d] that an award for non-economic injuries (pain and suffering) is in the province of a jury." In light of the court's ruling on summary judgment, and based on his review of reported verdicts in cases involving brain injuries, the expert opined that plaintiff's case had a settlement range between $1,500,000 and $3,000,000. The court denied plaintiff's motion for reconsideration.

## II.

## A.

Appellate courts "review[] an order granting summary judgment in accordance with the same standard as the motion judge." Bhagat v. Bhagat, 217 N.J. 22, 38 (2014) (citations omitted). Our function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is

a genuine issue for trial." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)); accord, R. 4:46-2(c). A trial court's determination that a party is entitled to summary judgment as a matter of law is not entitled to any "special deference," and is subject to de novo review. Cypress Point Condo. Ass'n, Inc. v. Adria Towers, L.L.C., 226 N.J. 403, 415 (2016) (citation omitted).

B.

Plaintiff first contends the court erred in granting defendants' summary judgment motion. He argues the court mistakenly required him to present expert testimony on the settlement value of his claim with and without defendants' malpractice. We agree the court erred in so ruling.

"Legal malpractice is a variation on the tort of negligence." Garcia v. Kozlov, Seaton, Romanini & Brooks, P.C., 179 N.J. 343, 357 (2004) (citing McGrogan v. Till, 167 N.J. 414, 425 (2001)). Thus, to prevail on a legal malpractice claim, "a plaintiff must prove a deviation from the standard, proximate causation, and damages." Ibid. (citing McGrogan, 167 N.J. at 425).

Here, defendants challenged the adequacy of plaintiff's proofs of the third element, damages. That challenge should have triggered a threshold inquiry in the analysis of defendants' motion: what harm does plaintiff claim defendants

9

caused by deviating from accepted standards of legal practice during their handling of his personal injury case? That inquiry leads naturally to two additional inquiries: is the harm compensable and, if so, what is the measure of damages?

Plaintiff's expert answered the first inquiry accurately: "[t]he actions and inactions of the various defendants in this case prevented the plaintiff from obtaining a fair and just verdict/settlement." Consistent with that opinion, in his response to defendants' statement of material facts, plaintiff stated he would submit evidence of his brain injury and economic loss to the jury and ask the jury "to determine an amount sufficient to compensate the plaintiff for his past and future pain and suffering and his past and future wage loss and loss of services that were proximately caused by the defendants' negligence."

The trial court appeared to labor under the misimpression that plaintiff was either seeking, or could recover, only a greater settlement sum. Had that been the case, perhaps plaintiff would have been required to produce an expert opinion concerning the difference in settlement values. Defendants' negligence, however, if proved, deprived plaintiff of more than the opportunity to obtain a higher settlement; it deprived him of the opportunity to obtain a fair and just verdict – a judgment awarding fair and reasonable compensation for all the

injuries and economic losses he suffered as a result of the underlying accident. Such harm is compensable.

The final inquiry, then, is what is the proper measure of damages. Precedent provides the answer. "When plaintiff has settled the underlying action, the measure of damages is the difference between the settlement and the amount of money that would have been obtained by judgment." Kranz v. Tiger, 390 N.J. Super. 135, 146 (App. Div. 2007) (citing Spaulding v. Hussain, 229 N.J. Super. 430, 444-45 (App. Div. 1988)).

A plaintiff may establish the measure of damages in such cases by proceeding by way of a "suit-within-a-suit," that is, by presenting to the jury the proofs that would have been presented had no malpractice occurred. See ibid.; see also Garcia, 179 N.J. at 358. In fact, the suit-within-a-suit method is the most common way to prove such a damage claim. See ibid.

That said, it is now settled "that a legal malpractice case may proceed in any number of ways depending on the issues." Id. at 346. Other methods include reasonable modifications of the suit-within-a-suit strategy and expert testimony. Ibid. The method best suited to a particular case "will depend upon the facts, the legal theories, the impediments to one or more modes of trial, and, where two or more approaches are legitimate, to plaintiff's preference." Ibid.

The Supreme Court has cautioned, however, that "[c]ourts are not to become involved in determining how a legal malpractice case is tried unless the parties disagree, in which case the final determination of the court is a discretionary judgment that is entitled to deference." Ibid. If the parties disagree, the trial court must settle the issue "through pretrial proceedings." Id. at 361 (quoting Lieberman v. Employers Ins. of Wausau, 84 N.J. 325, 343 (1980)).

In the matter before us, the suit-within-a-suit method is a reasonable and acceptable way for plaintiff to prove his damages – the difference between the settlement and the amount of money that would have been obtained by judgment. We do not discern from the motion record that the trial court exercised its discretion, resolved a dispute between the parties about the proper method of proof, and ruled to the contrary. Rather, the record reflects the court was fixed in its notion that the only measure of damages was the difference in the settlement values of plaintiff's claim with and without the malpractice. If we are misreading the record, and if the trial court was exercising its discretion to resolve the parties' dispute about plaintiff's method of proving damages, it abused its discretion by failing to consider the facts, legal theories, impediments to one or more modes of trial, plaintiff's preference, and the appropriate measure of damages.

A-1691-17T3

For the same reasons, we reject defendants' arguments that the trial court did not err by granting summary judgment. Like the trial court, defendants overlook the nature of plaintiff's damages and the measure of damages as expressly set forth in Kranz, 390 N.J. Super. at 146. They attempt to craft an argument that the trial court's summary judgment decision was a resolution of the parties' dispute about how the case should proceed. As noted, we disagree that the record supports such an argument.

Even if we were to construe defendants' motions as their objection to the method of proof plaintiff preferred, which we do not, we would find the objection untimely. As directed by the Supreme Court, such disagreements are to be settled by pretrial proceedings. The reason for this requirement seems obvious. If a trial court disallows a plaintiff to proceed in a preferred manner, the court must allow plaintiff time to develop proofs to conform to the court's dictate. An eve-of-trial ruling that precludes plaintiff from proceeding with the proofs developed during discovery, and affords a plaintiff no time to obtain evidence and experts to conform to a post-discovery ruling, is so fundamentally unfair it cannot be countenanced. Defendants' arguments to the contrary are without sufficient merit to warrant further discussion. R. 2:11-3(e)(1)(E).

## III.

In view of our disposition of plaintiff's first argument, we need not address the trial court's denial of plaintiff's motion for reconsideration. Because we are reversing and remanding, and because nearly a decade has passed since plaintiff's accident, we remand the case for trial. Trial shall be scheduled to commence within one hundred and twenty days. We suggest the court schedule a management conference to address the motions concerning plaintiff's economic expert and the motion concerning the subpoena, which apparently implicates Rule 4:10-2(d)(1). The issue presented on this appeal required us to evaluate the opinion of plaintiff's malpractice expert. It is not net and it includes an opinion concerning causation. Defendants' second motion challenging the malpractice expert's opinion – which the trial court did not reach – is thus moot.

During the management conference, the court can order dates on which the three outstanding depositions are to be completed. The depositions can be completed well within one hundred and twenty days. There is no reason to deprive defendants of the depositions they diligently pursued during discovery, or to deprive plaintiff of his right to an adjudication on the merits of his claim due to outstanding depositions, when the depositions can be completed well before trial.

A-1691-17T3

We are not mandating that the trial court decide before the trial defendants' motion to bar plaintiff's economic expert's opinion as net – another motion the trial court did not reach. That motion can be resolved, in the court's discretion, at trial following a hearing pursuant to N.J.R.E. 104.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1691-17T3